IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT LABORATORIES and<br>ABBOTT RESPIRATORY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | |
| LUPIN LIMITED and LUPIN<br>PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Plaintiffs Abbott Laboratories and Abbott Respiratory LLC (collectively, "Abbott"), by their attorneys, hereby allege as follows:

## Nature of the Action

This is an action for patent infringement of U.S. Patent Nos. 6,129,930 ("the '930 patent), 6,406,715 ("the '715 patent"), 6,676,967 ("the '967 patent"), 6,746,691 ("the '691 patent"), 7,011,848 ("the '848 patent"), 6,818,229 ("the '229 patent"), and 6,080,428 ("the '428 patent"), arising under the patent laws of the United States, Title 35, United States Code, 35 U.S.C. §§ 271 and 281. This action relates to Abbreviated New Drug Application ("ANDA") Nos. 90-446, 90-860, and 90-892 filed by Lupin Limited ("Lupin") with the U.S. Food and Drug Administration ("FDA") for approval to market 500 mg, 750 mg, and 1000 mg niacin extended-release tablets, which are generic versions of the 500 mg, 750 mg, and 1000 mg forms of Abbott's NIASPAN® drug product.

**Parties**

1.     Abbott Laboratories is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.

2.     Abbott Respiratory LLC ("Abbott Respiratory") is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.

3.     Upon information and belief, Lupin is a corporation organized and existing under the laws of India, having a principal place of business at Laxmi Towers, B Wing, Bandra Kurla Complex, Bandra (East), Mumbai, Maharashtra 400 051, India.  Upon information and belief, Lupin, itself and through its wholly-owned subsidiary and agent Lupin Pharmaceuticals, Inc., manufactures and/or distributes numerous generic drugs, including cefprozil, lisinopril, and meloxicam, for sale and use throughout the United States, including in this judicial district.

4.     Upon information and belief, Lupin Pharmaceuticals, Inc. ("LPI"), a wholly-owned subsidiary and agent of Lupin, is a Virginia corporation having a principal place of business at Harborplace Tower, 111 South Calvert Street, 21st Floor, Baltimore, Maryland 21202.  Upon information and belief, LPI is the United States agent for Lupin for purposes including but not limited to making regulatory submissions to the United States Food and Drug Administration ("FDA").  Upon information and belief, LPI also is the United States marketing and sales agent for Lupin, wherein, following FDA approval of an Abbreviated New Drug Application ("ANDA"), Lupin manufactures and supplies the approved generic drug product to LPI, which then markets and sells the product throughout the United States, including in this judicial district.

- 2 -

**Jurisdiction and Venue**

5.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).   Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

6.     This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they each have committed, or aided, abetted, contributed to, or participated in the commission of, a tortious act of patent infringement in filing ANDA Nos. 90-446, 90-860, and 90-892, that has led to foreseeable harm and injury to Abbott Respiratory, a Delaware corporation, and Abbott Laboratories, a corporation actively engaged in business in Delaware. This Court also has personal jurisdiction over each of the Defendants by virtue of, *inter alia*, their systematic and continuous contacts with Delaware as set forth below, and for other reasons that will be presented to the Court if jurisdiction is challenged.

7.     Upon information and belief, Lupin is in the business of developing, manufacturing, marketing, and selling generic drugs.   On information and belief, Lupin established LPI for the purpose of distributing, marketing and selling its generic drug products throughout the United States.   Lupin maintains an Internet website at the URL www.lupinworld.com at which it represents that it has a representative office at Harborplace Tower, 111 South Calvert Street, 21 Floor, Baltimore, Maryland, the principal place of business of LPI.

8.     Upon information and belief, LPI participated in the preparation and filing of Lupin's ANDA Nos. 90-446, 90-860, and 90-892, as an agent of Lupin and/or in its own capacity.   LPI maintains a website at the URL www.lupinpharmaceuticals.com at which it represents that it is dedicated to bringing Lupin's drugs to the United States market.

Specifically, LPI's website states: "founded on the strengths of our parent company Lupin Limited, Lupin Pharmaceuticals, Inc. intends to bring a portfolio of generics as well as branded products to the US market." Upon information and belief, and consistent with its practice with respect to other generic products, following any FDA approval of ANDA Nos. 90-446, 90-860, and 90-892, Lupin will sell generic 500 mg, 750 mg, and 1000 mg niacin extended-release tablets through LPI, throughout the United States, including in this judicial district.

9.     Upon information and belief, based in part on representations on their websites and Lupin's Annual Report, Lupin and LPI hold themselves out as a unitary entity by representing to the public that the activities of Lupin and LPI are directed, controlled, and carried out by a single entity, namely, Lupin, headquartered in India.

10.     Upon information and belief, Lupin maintains and controls a broad distribution network in the United States for Lupin's products and results in the distribution and sale of hundreds of millions of dollars of Lupin's products. According to Lupin's website, the United States is "Lupin's largest market overseas."

11.     Upon information and belief, based in part on the representations on their websites, Lupin and LPI sell Lupin drug products directly to Amerisource Bergen, Cardinal Health, CVS, and Walgreens, who then sell Lupin's drug products throughout the United States, including in this judicial district.

12.     Upon information and belief, based in part on the representations on its website, since at least December 20, 2005, LPI has maintained as an authorized distributor of record for Lupin's generic drugs within this judicial district, Happy Harry's, a Walgreen's pharmacy, 326 Ruthar Dr., Newark, Delaware 19711. Upon information and belief, there are presently at least 42 Happy Harry's locations in Delaware.

13.     Upon information and belief, Lupin is currently the sole manufacturer of the "Suprax®" drug product in the United States, and LPI distributes "Suprax®" for sale throughout the United States, including in this judicial district.  Upon information and belief, the package insert for the "Suprax®" drug product manufactured by Lupin and sold by LPI throughout the United States, including in this judicial district, states that the "Suprax®" drug product is manufactured for LPI.

14.     Upon information and belief, Lupin currently manufactures the "Prinzide®" drug product for distribution in the United States, and LPI distributes "Prinzide®" for sale throughout the United States, including in this judicial district.  Upon information and belief, the package insert for the "Prinzide®" drug product manufactured by Lupin and sold by LPI throughout the United States, including in this judicial district, states that the "Prinzide®" drug product is manufactured for LPI.

15.     Upon information and belief, Lupin currently manufactures the "Zocor®" drug product for distribution in the United States, and LPI distributes "Zocor®" for sale throughout the United States, including in this judicial district.  Upon information and belief, the package insert for the "Zocor®" drug product manufactured by Lupin and sold by LPI throughout the United States, including in this judicial district, states that the "Zocor®" drug product is manufactured for LPI.

16.     Upon information and belief, Lupin currently manufactures the "Keppra®" drug product for distribution in the United States, and LPI distributes "Keppra®" for sale throughout the United States, including in this judicial district.  Upon information and belief, the package insert for the "Keppra®" drug product manufactured by Lupin and sold by LPI

throughout the United States, including in this judicial district, states that the "Keppra®" drug product is manufactured for LPI.

17.     Upon information and belief, Lupin entered into a multi-year contract with Forest Laboratories, Inc., a Delaware corporation, to promote the "AeroChamber Plus®" drug product, whereby LPI has used its "50 person sales force to promote the product to pediatricians."   Upon information and belief, LPI distributes the "AeroChamber Plus®" throughout the United States, including in this judicial district.

18.     Upon information and belief, Lupin and LPI have not contested that this Court has personal jurisdiction over them and/or have consented to personal jurisdiction in this District in prior litigation, including *Forest Laboratories, Inc., et al. v. Lupin Pharmaceuticals, Inc., Lupin Ltd., et al.*, Civil Action 1:08-cv-021-GMS-LPS (D. Del.), and *Glaxo Group Ltd. and SmithKline Beecham Corporation Ltd. d/b/a GlaxoSmithKline v. Lupin Limited and Lupin Pharmaceuticals, Inc.*, Civil Action No. 1:08-cv-00551-JJF (D. Del.).

19.     Lupin and LPI have sought to take advantage of the jurisdiction of this Court by affirmatively filing counterclaims in other actions pending before this Court, including *Forest Laboratories, Inc., et al. v. Lupin Pharmaceuticals, Inc., Lupin Ltd., et al.*, Civil Action 1:08-cv-021-GMS-LPS (D. Del.), and *Glaxo Group Ltd. and SmithKline Beecham Corporation Ltd. d/b/a GlaxoSmithKline v. Lupin Limited and Lupin Pharmaceuticals, Inc.*, Civil Action No. 1:08-cv-00551-JJF (D. Del.).

20.     This Court has personal jurisdiction over Lupin by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

21.     This Court has personal jurisdiction over LPI by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

**Patents in Suit**

22.     Abbott Respiratory is the owner by assignment of the '930 patent, entitled "Methods and Sustained Release Nicotinic Acid Compositions for Treating Hyperlipidemia at Night," which the U.S. Patent and Trademark Office duly and legally issued on October 10, 2000.  A true and correct copy of the '930 patent is attached hereto as Exhibit A.  The claims of the '930 patent are valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '930 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '930 patent.

23.     Abbott Respiratory is the owner by assignment of the '715 patent, entitled "Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia Having Unique Urinary Metabolite Profiles," which the United States Patent and Trademark Office duly and legally issued on June 18, 2002.  A true and correct copy of the '715 patent is attached hereto as Exhibit B.  The claims of the '715 patent are valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '715 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '715 patent.

24.     Abbott Respiratory is the owner by assignment of the '967 patent, entitled "Methods for Reducing Flushing in Individuals Being Treated with Nicotinic Acid for Hyperlipidemia," which the United States Patent and Trademark Office duly and legally issued on January 13, 2004.  A true and correct copy of the '967 patent is attached hereto as Exhibit C. The claims of the '967 patent are valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '967 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '967 patent.

25.     Abbott Respiratory is the owner by assignment of the '691 patent, entitled "Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia Having Unique

Biopharmaceutical Characteristics," which the United States Patent and Trademark Office duly and legally issued on June 8, 2004.  A true and correct copy of the '691 patent is attached hereto as Exhibit D.  The claims of the '691 patent are valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '691 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '691 patent.

26.   Abbott Respiratory is the owner by assignment of the '848 patent, entitled "Hydrophobic Component Free Sustained Release Nicotinic Acid Compositions for Treating Hyperlipidemia and Related Methods Therefor," which the United States Patent and Trademark Office duly and legally issued on March 14, 2006.  A true and correct copy of the '848 patent is attached hereto as Exhibit E.  The claims of the '848 patent are valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '848 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '848 patent.

27.   Abbott Respiratory is the owner by assignment of the '229 patent, entitled "Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia," which the United States Patent and Trademark Office duly and legally issued on November 16, 2004.  A true and correct copy of the '229 patent is attached hereto as Exhibit F.  The claims of the '229 patent are valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '229 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '229 patent.

28.   Abbott Respiratory is the owner by assignment of the '428 patent, entitled "Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia," which the United States Patent and Trademark Office duly and legally issued on June 27, 2000.  A true and correct copy of the '428 patent is attached hereto as Exhibit G.  The claims of the '428 patent are

valid and enforceable.  Abbott Laboratories is an exclusive licensee of the '428 patent, with the right to sue for and obtain equitable relief and damages for infringement of the '428 patent.

29.     Abbott Laboratories is the holder of New Drug Application ("NDA") No. 20-381, by which the FDA granted approval for, *inter alia*, 500 mg, 750, mg, and 1000 mg niacin extended-release tablets, which Abbott markets in the United States under the trade name "Niaspan®."  The formulation and dosing of Niaspan® is covered by certain claims of the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent.  The FDA's official publication of approved drugs ("the Orange Book") includes Niaspan® together with the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent.

## Infringement by Lupin and LPI

30.     By letter dated January 22, 2009 ("the Notice Letter"), Lupin notified Abbott that Lupin had submitted ANDA Nos. 90-446, 90-860, and 90-892 to the FDA under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) seeking approval to engage in the commercial manufacture, use, and sale of generic niacin extended-release tablets before the expiration date of the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent.  Upon information and belief, Lupin and LPI intend to engage in commercial manufacture, use, and sale of generic niacin extended-release tablets promptly upon receiving FDA approval to do so.

31.     By filing ANDA Nos. 90-446, 90-860, and 90-892, Lupin has necessarily represented to the FDA that the components of its generic niacin extended-release tablets have the same active ingredients as those of the corresponding components of NIASPAN®, have the

same route of administration, dosage form, and strengths as the corresponding components of

NIASPAN®, and are bioequivalent to the corresponding components of NIASPAN®.

32.     In the Notice Letter, Lupin notified Abbott that its ANDA contained a

"Paragraph IV certification" asserting that, in Lupin's opinion, the '930 patent, the '715 patent,

the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent will not be

infringed by the commercial manufacture, use or sale of its generic niacin extended-release

tablets.

33.     This Complaint is being filed before the expiration of the forty-five days

from the date Abbott received the Notice Letter.

## Count I (Infringement of the '930 Patent)

34.     Each of the preceding paragraphs 1 to 32 is incorporated as if fully set

forth.

35.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to

obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic

niacin extended-release tablets prior to the expiration of the '930 patent constitutes infringement

of one or more of the claims of the '930 patent under 35 U.S.C. § 271(e)(2)(A).

36.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-

892, Defendants will further infringe the '930 patent by making, using, offering to sell, and

selling generic niacin extended-release tablets in the United States and importing such tablets

into the United States, and by actively inducing and contributing to infringement by others, in

violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

37.     Upon information and belief, Defendants had actual and constructive

notice of the '930 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware

that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '930 patent.

38.     If Defendants' infringement of the '930 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

## Count II (Infringement of the '715 Patent)

39.     Each of the preceding paragraphs 1 to 37 is incorporated as if fully set forth.

40.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic niacin extended-release tablets prior to the expiration of the '715 patent constitutes infringement of one or more of the claims of the '715 patent under 35 U.S.C. § 271(e)(2)(A).

41.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-892, Defendants will further infringe the '715 patent by making, using, offering to sell, and selling generic niacin extended-release tablets in the United States and importing such tablets into the United States, and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

42.     Upon information and belief, Defendants had actual and constructive notice of the '715 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '715 patent.

43.     If Defendants' infringement of the '715 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

## Count III (Infringement of the '967 Patent)

44.     Each of the preceding paragraphs 1 to 42 is incorporated as if fully set forth.

45.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic niacin extended-release tablets prior to the expiration of the '967 patent constitutes infringement of one or more of the claims of the '967 patent under 35 U.S.C. § 271(e)(2)(A).

46.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-892, Defendants will further infringe the '967 patent by making, using, offering to sell, and selling generic niacin extended-release tablets in the United States and importing such tablets into the United States, and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

47.     Upon information and belief, Defendants had actual and constructive notice of the '967 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '967 patent.

48.     If Defendants' infringement of the '967 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

## Count IV (Infringement of the '691 Patent)

49.     Each of the preceding paragraphs 1 to 47 is incorporated as if fully set forth.

50.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic

niacin extended-release tablets prior to the expiration of the '691 patent constitutes infringement of one or more of the claims of the '691 patent under 35 U.S.C. § 271(e)(2)(A).

51.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-892Defendants will further infringe the '691 patent by making, using, offering to sell, and selling generic niacin extended-release tablets in the United States and importing such tablets into the United States, and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

52.     Upon information and belief, Defendants had actual and constructive notice of the '691 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '691 patent.

53.     If Defendants' infringement of the '691 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

### Count V (Infringement of the '848 Patent)

54.     Each of the preceding paragraphs 1 to 52 is incorporated as if fully set forth.

55.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic niacin extended-release tablets prior to the expiration of the '848 patent constitutes infringement of one or more of the claims of the '848 patent under 35 U.S.C. § 271(e)(2)(A).

56.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-892, Defendants will further infringe the '848 patent by making, using, offering to sell, and selling generic niacin extended-release tablets in the United States and importing such tablets

into the United States, and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

57.     Upon information and belief, Defendants had actual and constructive notice of the '848 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '848 patent.

58.     If Defendants' infringement of the '848 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

### Count VI (Infringement of the '229 Patent)

59.     Each of the preceding paragraphs 1 to 57 is incorporated as if fully set forth.

60.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic niacin extended-release tablets prior to the expiration of the '229 patent constitutes infringement of one or more of the claims of the '229 patent under 35 U.S.C. § 271(e)(2)(A).

61.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-892, Defendants will further infringe the '229 patent by making, using, offering to sell, and selling generic niacin extended-release tablets in the United States and importing such tablets into the United States, and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

62.     Upon information and belief, Defendants had actual and constructive notice of the '229 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware

that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '229 patent.

63.     If Defendants' infringement of the '229 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

## Count VII (Infringement of the '428 Patent)

64.     Each of the preceding paragraphs 1 to 62 is incorporated as if fully set forth.

65.     Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of generic niacin extended-release tablets prior to the expiration of the '428 patent constitutes infringement of one or more of the claims of the '428 patent under 35 U.S.C. § 271(e)(2)(A).

66.     Upon FDA approval of Defendants' ANDA Nos. 90-446, 90-860, and 90-892, Defendants will further infringe the '428 patent by making, using, offering to sell, and selling generic niacin extended-release tablets in the United States and importing such tablets into the United States, and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271(a)-(c) unless enjoined by this Court.

67.     Upon information and belief, Defendants had actual and constructive notice of the '428 patent prior to filing ANDA Nos. 90-446, 90-860, and 90-892, and were aware that filing of the aforementioned ANDAs with the FDA constituted an act of infringement of the '428 patent.

68.     If Defendants' infringement of the '428 patent is not enjoined, Abbott will suffer substantial and irreparable harm for which there is no remedy at law.

### Prayer for Relief

WHEREFORE, Abbott prays that this Court grant the following relief:

(a)     A judgment that one or more claims of the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent are infringed Defendants' submission of ANDA Nos. 90-446, 90-860, and 90-892, and that Defendants' making, using, offering to sell, or selling in the United States, or importing into the United States, of generic niacin extended-release tablets will infringe the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent;

(b)     An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval of ANDA Nos. 90-446, 90-860, and 90-892 shall be a date which is not earlier than the latest expiration date of the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent, including any extensions and/or additional periods of exclusivity to which Abbott is or becomes entitled;

(c)     An order permanently enjoining Lupin, LPI, their affiliates and subsidiaries, and each of their officers, agents, servants and employees and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States generic niacin extended-release tablets until after the latest expiration date of the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and the '428 patent, including any extensions and/or additional periods of exclusivity to which Abbott is or becomes entitled;

(d)     Damages or other monetary relief to Abbott if Lupin and/or LPI engages in the commercial manufacture, use, offer to sell, sale, or importation in or into the United States of generic niacin extended-release tablets prior to the latest expiration date of the '930 patent, the '715 patent, the '967 patent, the '691 patent, the '848 patent, the '229 patent, and

the '428 patent, including any extensions and/or additional periods of exclusivity to which

Abbott is or becomes entitled; and

       (e)     Such further and other relief as this Court deems proper and just,

including any appropriate relief under 35 U.S.C. § 285.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
   *Attorneys for Abbott Laboratories*
   *and Abbott Respiratory LLC*

OF COUNSEL:

William F. Lee
Hollie L. Baker
Vinita Ferrera
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

March 6, 2009
2756194.2