# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT LABORATORIES and ABBOTT RESPIRATORY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 09-152-JJF |
| LUPIN LIMITED and LUPIN PHARMACEUTICALS, INC., | ) ) ) | **REDACTED VERSION** |
| Defendants. | ) ) | |

## OPENING BRIEF IN SUPPORT OF LUPIN LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND DEFENDANTS' MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. §1404

*Of Counsel:*

FROMMER LAWRENCE & HAUG LLP
Barry S. White
Steven M. Amundson
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800

YOUNG CONAWAY STARGATT & TAYLOR LLP
Karen L. Pascale (#2903)
Megan C. Haney (#5016)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com
mhaney@ycst.com

*Attorneys for Defendants, Lupin Limited and Lupin Pharmaceuticals, Inc.*

April 23, 2009
Redacted Version Filed: April 30, 2009

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.       NATURE AND STAGE OF PROCEEDINGS ......................................................1

II.      STATEMENT OF FACTS ....................................................................................3

III.     ARGUMENT ........................................................................................................7

      A.     Personal Jurisdiction ................................................................................7

            1.     Specific Jurisdiction...................................................................9

            2.     General Jurisdiction ................................................................11

                  a.     Lupin Pharma Is Not the Alter Ego of Lupin Ltd...........................12

                  b.     Contacts with Delaware Are Not Sufficient to Warrant a Finding of General Jurisdiction Over Lupin Ltd. ....................................................................16

            3.     Due Process...............................................................................19

      B.     Transfer...................................................................................................21

IV.      CONCLUSION...................................................................................................27

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Affymetrix, Inc. v. Synteni, Inc.,*
    28 F. Supp. 2d 192 (D. Del. 1998)................................................................................ 24

*Altech Indus., Inc. v. Al Tech Specialty Steel Corp.,*
    542 F. Supp. 53 (D. Del. 1982)................................................................................... 14

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
    772 F. Supp. 1458 (D. Del. 1991)......................................................................... passim

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)........................................................................................... 19, 21

*Burroughs Wellcome Co. v. Giant Food Inc.*
    392 F. Supp. 761 (D. Del. 1975).................................................................................. 24

*C.R. Bard, Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998)..................................................................... 12, 13, 14

*Carbice Corp. v. American Patents Dev. Corp.,*
    283 U.S. 27 (1931).................................................................................................... 11

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics, Corp.,*
    395 F.3d 1315 (Fed. Cir. 2005)................................................................................. 11

*Continental Cas. Co. v. American Home Assurance Co.,*
    61 F. Supp. 2d 128 (D. Del. 1999)........................................................................ 23, 24

*Eli Lilly & Co. v. Medtronic, Inc.,*
    496 U.S. 661 (1990).................................................................................................. 10

*Forest Labs., Inc., et al. v. Cobalt Labs. Inc.,et al.,*
    D. Del., C.A. No. 08-21-GMS-LPS (Consolidated) ......................................................... 5

*Foster Wheeler Energy Corp. v. Metallgesellschaft AG,*
    C.A. No. 91-214-SLR, 1993 WL 669447 (D. Del. Jan. 4, 1993). ................................... 11

*General Instrument Corp. v. Mostek Corp.*
    417 F. Supp. 821 (D. Del. 1976).................................................................................. 24

*Genzyme Corp. v. Lupin Ltd., et al.,*
    D. Del., C.A. No. 09-147-RK ..................................................................................... 5

*Glaxo Group Ltd., et al. v. Lupin Ltd., et al.,*
    D. Del., C.A. No. 08-551-RFK ............................................................................ 5

*Goldlawr, Inc. v. Heiman,*
    369 U.S. 463 (1962) .......................................................................................... 21

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) .......................................................................................... 23

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ............................................................................. 9, 11, 19

*Hildebrand v. Steck Mfg. Co.,*
    279 F.3d 1351 (Fed. Cir. 2002) .......................................................................... 7

*Hollyanne Corp. v. TFT, Inc.,*
    199 F.3d 1304 (Fed. Cir. 1999) ................................................................ 7, 8, 19

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,*
    147 F. Supp. 2d 268 (D. Del. 2001) .................................................................. 12

*In re TS Tech,* 551 F.3d 1315 (Fed. Cir. 2008) ..................................................... 22

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ............................................................................ 23

*International Shoe Co. v. Wash.,*
    326 U.S. 310 (1945) ..................................................................................... 8, 19

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995) .......................................................................... 22, 23

*KAB Enter. Co. v. Ursich Elec. Prods. Inc.,*
    Civ. No. 06-4361, 2007 WL 1118308 (E.D. Pa. Apr. 13, 2007). ..................... 25

*Kahhan v. City of Fort Lauderdale,*
    566 F. Supp. 736 (E.D. Pa. 1983). ................................................................... 25

*Max Daetwyler Corp. v. R. Meyer,*
    762 F.2d 290 (3d Cir. 1985) ............................................................................... 9

*Merck & Co. v. Barr Labs., Inc.,*
    179 F. Supp. 2d 368 (D. Del. 2002) ......................................................... passim

*Monsanto Co. v. Syngenta Seeds, Inc.,*
    443 F. Supp. 2d 636 (D. Del. 2006) .................................................................. 14

*Power Integrations, Inc. v. BCD Semiconductor Corp.,*
    547 F. Supp. 2d 365 (D. Del. 2008) ............................................................. 8, 11

*Red Wing Shoe Co. Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998)............................................................... 7, 8, 19

*Renzetti, Inc. v. D.H. Thompson, Inc.,*
    No. 96-cv-8520, 2007 WL 230806 (E.D. Pa. May 2, 1997)............................................ 25

*Ricoh Co. v. Honeywell, Inc.*
    817 F. Supp. 473 (D.N.J. 1993). ....................................................................... 25

*S.C. Johnson & Son, Inc. v. Gillette Co.,*
    571 F. Supp. 1185 (N.D. Ill.1983). .................................................................... 25

*Saint-Gobain Calmar, Inc. v. National Prods. Corp.,*
    230 F. Supp. 2d 655 (E.D. Pa. 2002). .................................................................. 24

*Sciele Pharma, Inc., et al. v. Lupin Ltd., et al.,*
    D. Del., C.A. No. 09-37-JJF. ........................................................................... 5

*Sears, Roebuck & Co. v. Sears plc,*
    752 F. Supp. 1223 (D. Del. 1990).................................................................. 12, 14, 15

*Sears, Roebuck & Co. v. Sears plc,*
    744 F. Supp. 1297 (D. Del 1990).................................................................. 9, 14, 19, 21

*Shamsuddin v. Vitamin Research Prods.,*
    346 F. Supp. 2d 804 (D. Md. 2004).................................................................. 7, 8, 19

*Shutte v. Armco Steel Co.,*
    431 F.2d 22 (3d Cir. 1970)............................................................................. 23

*Solae, LLC v. Hershey Canada Inc.,*
    557 F. Supp. 2d 452 (D. Del. 2008)..................................................................... 8, 9

*Storage Tech. Corp. v. Cisco Sys., Inc.,*
    329 F.3d 823 (Fed. Cir. 2003).......................................................................... 22

*Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.,*
    C.A. No. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002). ................................... 23

*Telcordia Techs., Inc. v. Alcatel S.A.,*
    C.A. No. 04-874-GMS, 2005 WL 1268061 (D. Del. May 27, 2005). ....................... 13, 14

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship,*
    882 F. Supp. 359 (D. Del. 1994). ...................................................................... 22

*United States v. Berkowitz,*
    328 F.2d 358 (3d Cir. 1964)............................................................................ 21

*United States v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................. 13

*United States v. Consolidated Rail Corp.*,
    674 F. Supp. 138 (D. Del. 1987)........................................................ 17

*United States v. Swift & Co.*,
    158 F. Supp. 551 (D.D.C. 1958). ...................................................... 27

*Viam Corp. v. Iowa Export-Import Co.*,
    84 F.3d 424 (Fed. Cir. 1996)........................................................ 8, 19

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*,
    201 F. Supp. 2d 294 (D. Del. 2002). ............................................ 8, 9

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)....................................................................... 19

*X-Rail Sys., Inc. v. Norfolk & Western Ry. Co.*,
    485 F. Supp. 553 (D.N.J. 1980). ..................................................... 25

*Zeneca Ltd. v. Mylan Pharms., Inc.*,
    No. 96-1736 WL 925640 (D. Md. Jan. 6, 1996)..................... passim

**Statutes**

21 U.S.C. § 355(j)................................................................................. 1, 23

28 U.S.C. § 1404(a) ........................................................................... passim

28 U.S.C. § 1406(a) ................................................................................. 21

35 U.S.C. § 271(e)(2)(A) ............................................................... 2, 10, 23

Del. Code Ann. Title 10, § 3104....................................................................... 9

Del. Code Ann. Title 10, § 3104(c)(1)............................................................ 10

Del. Code Ann. Title 10, § 3104(c)(4)............................................................. 9

**Other Authorities**

15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3845 (2008)................ 22, 23, 24, 25

Defendant Lupin Limited ("Lupin Ltd.") respectfully moves the Court, pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure, to dismiss the complaint filed against Lupin Ltd. in this case, for want of personal jurisdiction over Lupin Ltd. and for improper venue. Defendants Lupin Ltd. and Lupin Pharmaceuticals, Inc. ("Lupin Pharma") (collectively "the Lupin Defendants") also move the Court, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the District of Maryland, in which an action among the same parties already is pending.  For the reasons set forth herein, the Court should grant these motions.

## I.      NATURE AND STAGE OF PROCEEDINGS

This is an action for patent infringement brought under the Hatch-Waxman Act, 21 U.S.C. § 355(j).  Although one of the plaintiffs (Abbott Respiratory LLC) is incorporated in Delaware, there is no other connection between any of the parties or the subject matter of the litigation and Delaware.

On March 6, 2009, the plaintiffs in this case filed two complaints, one in this Court, and the second in the United States District Court for the District of Maryland (Civil Action No. 09-564-WMN).[1]  The Lupin Defendants agree:  (i) that venue is proper in the District of Maryland; (ii) that Maryland has personal jurisdiction over Lupin Pharma; and (iii) that Lupin Ltd. will consent to personal jurisdiction in the District of Maryland.  According to both complaints, plaintiff Abbott Respiratory LLC is the owner of United States Patent Nos. 6,129,930 ("the '930 patent"), 6,406,715 ("the '715 patent"), 6,676,967 ("the '967 patent"), 6,746,691 ("the '691 patent"), 7,011,848 ("the '848 patent"), 6,818,229 ("the '229 patent"), and 6,080,428 ("the '428 patent") (collectively "the patents in suit").  The patents in suit relate to nicotinic acid formulations used in the treatment of hyperlipidemia.  DE Compl. [D.I. 1)] ¶¶ 22-28; MD

---

[1]     A copy of the District of Maryland Complaint is attached hereto as Exhibit 1.

Compl. ¶¶ 21-27.  The complaints allege that Abbott Laboratories is the holder of New Drug Application ("NDA") No. 20-381, by which the United States Food and Drug Administration ("FDA") granted approval for 500-mg, 750-mg, and 1000-mg extended-release niacin tablets. D.I. 1 ¶ 29; MD Compl. ¶¶ 28.

Abbott Respiratory LLC's principal place of business is in Abbott Park, Illinois, although it is a Delaware corporation.  Abbott Laboratories is an Illinois corporation.  D.I. 1 ¶¶ 1-2; MD Compl. ¶¶ 1-2.  Abbott Laboratories is the exclusive licensee of the patents in suit.  D.I. 1 ¶¶ 22-28; MD Compl. ¶¶ 21-27.

The complaints allege that the Lupin Defendants have infringed the '930, '715, '967, '691, '848, '229, and '418 patents, pursuant to 35 U.S.C. § 271(e)(2)(A), by reason of the filing by Lupin Ltd. of Abbreviated New Drug Applications ("ANDAs"), Nos. 90-446, 90-892, and 90-860, seeking FDA approval to engage in the commercial manufacture, use, or sale of the niacin extended-release drug product allegedly claimed in the '930, '715, '967, '691, '848, '229, and '418 patents before their expirations.  D.I. 1 ¶¶ 30, 35, 40, 45, 50, 55, 50, 60, 65; MD Compl. ¶¶ 29, 34, 39, 44, 49, 54, 59, 64.

As acknowledged by both complaints, Lupin Ltd., is a "corporation organized and existing under the laws of India, having a principal place of business at Laxmi Towers, B Wing, Bandra Kurla Complex, Bandra (East), Mumbai, Maharashtra 400 051, India."  D.I. 1 ¶ 3; MD Compl. ¶ 3.  The complaints acknowledge that Lupin Pharma is "a wholly-owned subsidiary and agent of Lupin" Ltd. and is "a Virginia corporation having a principal place of business at Harborplace Tower, 111 South Calvert Street, 21st Floor, Baltimore, Maryland 21202."  D.I. 1 ¶ 4 ; MD Compl. ¶ 4.

Lupin Ltd. and Lupin Pharma filed their answer and counterclaim in the District of Maryland on April 8, 2009.[2] They filed an answer in this Court on March 26, 2009 [D.I. 7]. In Maryland, Lupin Pharma admitted that the Court has subject-matter and personal jurisdiction and that venue is proper in the District of Maryland; Lupin Ltd. admitted that the Court has subject-matter and did not contest personal jurisdiction in that District, solely for the purposes of that action. MD Answer ¶¶ 5-6. In this Court, in contrast, while Lupin Pharma admitted that the Court has subject-matter and personal jurisdiction and that venue is proper, Lupin Ltd. has denied that the Court has personal jurisdiction, and it has denied that venue is proper in this District. D.I. 7 ¶¶ 5-6. Lupin Ltd. now moves to dismiss for lack of personal jurisdiction and improper venue, and Defendants now move for transfer pursuant to 28 U.S.C. § 1404.

## II.     STATEMENT OF FACTS

Lupin Ltd. is a pharmaceutical company organized and existing under the laws of India. Its only place of business is in India. *See* N. Gupta Decl., ¶ 3, filed herewith. Lupin Ltd. maintains no presence of any kind in Delaware. ███████████████████

████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

████████████████

Lupin Ltd. does not manufacture, develop or test any products in Delaware. *Id.* ¶ 14. It does not ship or sell any products directly in Delaware, and does not store or warehouse any products in Delaware. *Id.* ¶ 16. Lupin Ltd. does not directly advertise, market, or sell generic

---

[2]     A copy of the District of Maryland Answer is attached hereto as Exhibit 2.

products in Delaware, or otherwise solicit sales in Delaware. *Id.* ¶ 18-19.  Lupin Ltd. has not

entered into any licensing agreements with any companies in Delaware, is not registered with the

Secretary of State to do business in Delaware, and is not licensed by the State of Delaware to sell

drugs in the state. *Id.* ¶ 20.   It does not specifically target Delaware for sale of its products, and

it does not directly derive any of its revenue from sales in Delaware. *Id.* ¶¶ 17, 21. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

The ANDAs at issue in this case were prepared entirely by Lupin Ltd., in India, based

upon research and development work that occurred entirely in India. *Id.* ¶ 5-6.  The ANDAs

were filed by Lupin Ltd. with the FDA, at the FDA's offices in the District of Maryland. *Id.*

¶ 12. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

Lupin Ltd. has been sued in this District on only four prior occasions.  In one case,

currently pending, it was sued along with more than a dozen other defendants in what, in

essence, is forced multi-district litigation that has been effectively consolidated by the actions of

the plaintiffs in that case. *See Forest Labs., Inc., et al. v. Cobalt Labs. Inc., et al.*, D. Del., C.A.

No. 08-21-GMS-LPS (Consolidated).  For the convenience of all parties, Lupin Ltd. chose in that

case not to contest jurisdiction in this Court to avoid the time and expense of litigation before the

MDL Panel, along with jurisdictional litigation in this Court.  In another recent case, *Glaxo*

*Group Ltd., et al. v. Lupin Ltd., et al.*, D. Del., C.A. No. 08-551-RK,[3] for purposes of

convenience in that case, Lupin Ltd. chose not to contest personal jurisdiction in this District,

stating in its answer that "to conserve the resources of the parties and the Court, [Lupin Ltd.

does] not contest personal jurisdiction for the purposes of this action only." *Id.*  In *Genzyme*

*Corp. v. Lupin Ltd., et al.*, D. Del., C.A. No. 09-147-RK, the case was dismissed prior to any

appearance or response by Lupin.  And most recently, in *Sciele Pharma, Inc., et al. v. Lupin Ltd.,*

*et al.*, D. Del., C.A. No. 09-37-JJF, Lupin Ltd. did contest personal jurisdiction, and Lupin Ltd.

and Lupin Pharma have moved to dismiss that case or have it transferred to the District of

Maryland.  *See* D.I. 16-19 in C.A. No. 09-37-JJF (filed March 9, 2009).

    Lupin Pharma is a wholly owned subsidiary of Lupin Ltd.  *See* V. Gupta Decl., ¶ 3, filed

herewith.  As noted above, it is a Virginia corporation that has its principal place of business in

Baltimore, Maryland.  *Id.*  Lupin Pharma does not manufacture, develop or test any products.  *Id.*

¶ 7.  It does not prepare or independently file any ANDAs.  *Id.*

    Lupin Pharma is a separate corporation from Lupin Ltd., with separate stock and separate

directors.  *Id.* ¶ 4.  Vinita Gupta, Lupin Pharma's President, also serves as a non-executive

member of the board of directors of Lupin Ltd.  *Id.*  All of the corporate formalities are fully

maintained.  *Id.* ██████████████████████████████████████

████████████████████████████████████████████████████████

---

[3]    The case was originally assigned to Judge Joseph J. Farnan before being reassigned to Judge
      Robert F. Kelly of the Eastern District of Pennsylvania (in lieu of Vacant Judgeship) on
      November 5, 2008, pursuant to the Standing Order in Delaware.  *See*
      http://www.ded.uscourts.gov/StandingOrdersMain.htm.

accounting in the United States is independently done, and ███████████████████
█████████████████████████████████████████████████ *Id.* ¶¶ 4, 14.
Lupin Pharma has complete control over all of its day-to-day operations, and it does not require
any approval from or by Lupin Ltd. to engage in any transaction in the United States, other than
an acquisition of another company or business entity. *Id.* ¶ 5. Lupin Ltd. does not direct Lupin
Pharma to take any actions, either for Lupin Ltd. or for Lupin Pharma. *Id.* All dealings and
transactions relating to the distribution of products in the United States are subject solely to the
control and direction of Lupin Pharma. *Id.*

While Lupin Pharma does not specifically target Delaware for sale of any of the generic
products that it markets, Lupin Pharma does sell products, manufactured by Lupin Ltd., ████
█████████████████████████████████████████████████████████████████████
¶¶ 12, 14. Lupin Pharma is registered with the Secretary of State to do business in Delaware,
and it has a national registered agent for that purpose. *Id.* ¶ 3. Lupin Pharma maintains no
presence of any kind in Delaware. It does not store or warehouse any products in Delaware. *Id.*
¶ 12. It has no Delaware bank accounts, mailing addresses, telephone listings, offices,
manufacturing facilities, research facilities, testing facilities, laboratories, warehouses or any
other facilities in Delaware. *Id.* ¶¶ 11, 12. Lupin Pharma does not own or rent any real or
personal property in Delaware and it holds no assets in Delaware. *Id.* ¶ 11. Nor does Lupin
Pharma have a single employee in Delaware. *Id.* ¶ 12.

Lupin Pharma sells products throughout the United States and some of the products it
sells are marketed in Delaware. *Id.* ¶ 12. ████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

*Id.*

     As noted above, Lupin Pharma has been identified as "the United States Agent of Lupin Limited for [this] ANDA," and thus Lupin Pharma participated in the filing of ANDA Nos. 90-446, 90-892, and 90-860, just in that manner. *Id.* ¶ 9. Lupin Pharma does not serve as an agent of Lupin Ltd. generally, or for any purpose other than as required by the FDA in the course of Lupin Ltd.'s filing of ANDAs. *Id.* Indeed, Lupin Ltd. has not authorized Lupin Pharma to serve as its agent for any other purpose. *Id.* ¶ 10.

## III.   ARGUMENT

     Lupin Ltd.'s contacts with Delaware are non-existent. As a result, it would be inappropriate for this Court to exercise personal jurisdiction over Lupin Ltd., without its consent, or to find that venue is proper in this District. Both Lupin Ltd. and Lupin Pharma submit that these facts support a finding that transfer of this action to the District of Maryland, where the plaintiffs' parallel action is pending, is appropriate, since all parties, including the plaintiffs, have agreed to subject themselves to Maryland jurisdiction.

### A.   **Personal Jurisdiction**

     Federal Circuit precedent applies to personal jurisdiction challenges in patent cases. *See Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *Zeneca Ltd. v. Mylan Pharms,, Inc.*, No. 96-1736, 1996 WL 925640, at *1 (D. Md. Jan. 6, 1996); *see also Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999); *Red Wing Shoe Co. Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 807 (D. Md. 2004). In determining issues which the Federal Circuit has not addressed, however, the law of the Third Circuit applies. *See Zeneca,* 1996 WL 925640, at *1.

This Court may exercise personal jurisdiction over a non-resident defendant, such as Lupin Ltd., only if two requirements are satisfied. *See Viam Corp. v. Iowa Export-Import Co.,* 84 F.3d 424, 427 (Fed. Cir. 1996). First, Delaware's long-arm statute must confer personal jurisdiction. Second, personal jurisdiction must be consistent with constitutional requirements of due process. *Id. See also Hollyanne,* 199 F.3d at 1307; *Red Wing,* 148 F.3d at 1358; *Shamsuddin,* 346 F. Supp. 2d at 807; *Zeneca,* 1996 WL 925640, at *2. The first part of the analysis, under a state's long arm statute, "must refer to state law even when underlying legal issues involve federal patent law." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1462 (D. Del. 1991). In the second, constitutional, part of the analysis, the Court must determine whether the exercise of jurisdiction would comport with the defendant's right to due process. *Merck & Co. v. Barr Labs., Inc.,* 179 F. Supp. 2d 368, 371 (D. Del. 2002) (*citing International Shoe Co. v. Washington,* 326 U.S. 310 (1945)).

When personal jurisdiction over a defendant is, as here, challenged by a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists. *See Power Integrations, Inc. v. BCD Semiconductor Corp.,* 547 F. Supp. 2d 365 (D. Del. 2008). "'When a non-resident [defendant] challenges personal jurisdiction, the burden is on the plaintiff to show that the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits [and] protections of its laws.'" *Solae, LLC v. Hershey Canada Inc.,* 557 F. Supp. 2d 452, 459 (D. Del. 2008) (*quoting Virgin Wireless, Inc. v. Virgin Enters. Ltd.,* 201 F. Supp. 2d 294, 298 (D. Del. 2002)). "As such, the plaintiff may not rely on the pleadings alone to withstand a motion to dismiss for lack of personal jurisdiction." *Solae,* 557 F. Supp. 2d at 459. "Rather, 'the plaintiff must come forward with facts to establish by a preponderance of the evidence that the court can exercise personal jurisdiction over the defendant.'" *Solae,* 557 F. Supp. 2d at 459 (*quoting Virgin Wireless,* 201 F. Supp. 2d at 298).

Delaware's long-arm statute provides for two types of personal jurisdiction: specific and general. Del. Code Ann. Title 10, § 3104.[4] For purposes of specific jurisdiction, the cause of action must arise out of the defendant's activities within Delaware; for general jurisdiction a defendant is required to have "continuous and systematic contacts" with the state. *Merck*, 179 F. Supp. 2d at 371 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).[5] Continuous and systematic contacts are present if the defendant or its agent "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or thing used or consumed in the State." Del. Code Ann. Title 10, § 3104(c)(4).

### 1. Specific Jurisdiction

The plaintiffs cannot establish specific jurisdiction over Lupin Ltd. in this case. Their alleged cause of action did not arise from any activity by Lupin Ltd. within the State of Delaware. Under Delaware's long-arm statute, for specific jurisdiction to exist, "the cause of action must arise from the contacts with the forum." Del. Code Ann. Title 10, § 3104(c)(1), (c)(3); *see also Applied Biosystems*, 772 F. Supp. at 1466. A "jurisdictional act," in this context,

---

[4]  Del. Code Ann. Title 10, § 3104. Personal jurisdiction by acts of nonresidents.

   (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

     (1) Transacts any business or performs any character of work or service in the State;

     (2) Contracts to supply services or things in this State;

     (3) Causes tortious injury in the State by an act or omission in this State;

     (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

[5]  The court should only consider the contacts with the forum state, as contacts the foreign defendant has with other states are entirely irrelevant. *See Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 297 (3d Cir. 1985); *Sears Roebuck & Co. v. Sears plc,* 744 F. Supp. 1289, 1292 n.3 (D. Del. 1990) (hereinafter *"Sears I"*).

is any act or omission committed by a defendant in Delaware that also causes tortious injury in Delaware. *Id.* "Simply put, in order for a defendant to commit an act in Delaware and be subject to subsection (c)(3), *the defendant,* or an agent of the defendant, *must be present in Delaware when the deed is done." Sears I,* 744 F. Supp. at 1294 (emphasis added). The only "act" of infringement, and the only "jurisdictional act" specified in the complaint is the filing of the ANDAs:[6] the plaintiffs' patent infringement claims are based solely upon the submission of ANDA Nos. 90-446, 90-892, and 90-860 to the FDA, and are said to arise under 35 U.S.C. § 271(e)(2)(A). D.I. 1 ¶¶ 30, 35, 40, 45, 50, 55, 50, 65. As noted above, the ANDAs were prepared entirely in India, and their filing occurred in Maryland, not Delaware. That "artificial" act of alleged infringement neither "takes advantage of [Delaware's] commercial laws and legal structures nor targets [Delaware's] markets and residents." *Zeneca Ltd. v. Mylan Pharms., Inc.,* 173 F.3d 829, 836 (Fed. Cir. 1999) (Rader, J., concurring).[7]

The complaint in this case does not appear to assert that the Court has personal jurisdiction over Lupin Ltd. based upon a theory of specific jurisdiction, even based on the notion that the filings of the ANDAs were "torts." *See Merck,* 179 F. Supp. 2d at 373 (*citing Carbice Corp. v. American Patents Dev. Corp.,* 283 U.S. 27, 33, (1931)). Instead, the complaint appears to rely upon the theory that each of the defendants "have committed, or aided, abetted,

---

[6]   "The 'act' of mailing, for purposes of [Del. Code Ann. Title 10, § 3104] (c )(3), is complete when the material is mailed. Any other interpretation of the statute would mean that anytime tortious injury was felt in Delaware, the alleged tortfeasor could be deemed to have committed an 'act' in Delaware ... [and] would 'eviscerate the distinction between subsections (c)(3) and (c)(4) ....'" *Sears I,* 744 F. Supp. at 1294.

[7]   The Supreme Court has determined that the filing of an ANDA is an "artificial" act of infringement. *Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661, 678 (1990). Therefore, "refusing to apply the government contact exception [to the filing of an ANDA] would undermine the purpose of the Hatch-Waxman Act." *Zeneca,* 173 F.3d at 832. The filing of the ANDA itself does not create personal jurisdiction in Maryland. *Id.* Nor does the act, by itself, create personal jurisdiction anywhere else.

contributed to, or participated in the commission of, the tortious act of patent infringement in

filling ANDA Nos. 90-446, 90-892, and 90-860, *that has led to foreseeable harm and injury to*

Abbott Respiratory, a Delaware corporation, and Abbott Laboratories, a corporation actively

engaged in business in Delaware." D.I. 1 ¶ 6 (emphasis added). The Complaint alleges no facts

to suggest that any such alleged "harm" or "injury" to the plaintiffs has occurred in Delaware.

Indeed, since the plaintiffs' principal places of business are in a jurisdiction *other than* Delaware,

it would seem impossible for the plaintiffs to so allege. The situs of the injury is the place where

the patent holder suffers harm, *i.e.*, the patent holder's principal place of business. *See, e.g.*,

*Applied Biosystems*, 772 F. Supp. at 1468; *Foster Wheeler Energy Corp. v. Metallgesellschaft*

*AG*, C.A. No. 91-214-SLR, 1993 WL 669447, at *5 n.7 (D. Del. Jan. 4, 1993) ("Here, where

[plaintiffs'] sole Delaware contact is as [plaintiffs'] state of incorporation, and [plaintiffs']

principal place of business is in New Jersey, any injury for alleged infringement of [plaintiffs']

patents occurred in New Jersey, not in Delaware.").[8]

### 2.    General Jurisdiction

More likely, given the allegations of the complaint, D.I. 1 ¶¶ 7-17, the plaintiffs appear to

rely upon the theory that, by virtue of the contacts that Lupin Pharma has had with Delaware,

both Lupin Pharma and Lupin Ltd. must be deemed to have "continuous and systematic

contacts" with the state. *Merck*, 179 F. Supp. 2d at 371; *Helicopteros Nacionales*, 466 U.S. 408

(1984). Indeed, the complaint asserts that "[t]his Court has personal jurisdiction over [Lupin

Pharma] by virtue of, *inter alia*, its systematic and continuous contacts with Delaware," D.I. 1 ¶

21, and that "[t]his Court has personal jurisdiction over each of the Defendants by virtue of, *inter*

---

[8]    *See also Power Integrations*, 547 F. Supp. 2d at 373; *Commissariat a L'Energie Atomique* v.
*Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1318 (Fed. Cir. 2005). "[T]he mere filing of
an ANDA does not at that point even cause a tangible injury to the patent holder." *Zeneca*,
173 F.3d at 836 (Rader, J., concurring). Hence, any alleged injury would have occurred, if at
all, in Illinois.

*alia,* their systematic and continuous contacts with Delaware." D.I. 1 ¶ 6. *See also id.* ¶ 20-21.

Since the complaint fails to allege any direct contact between Lupin Ltd. and Delaware, it

appears that the only arguments that the plaintiffs have asserted are that: (i) general jurisdiction

over Lupin Ltd. may be found to exist by reason of and through imputation of the business

activities of its subsidiary, Lupin Pharma; and (ii) general jurisdiction over Lupin Ltd. may be

found to exist by reason of and through Lupin Ltd.'s involvement in other litigations in this

District . D.I. 1 ¶¶ 7-19.

### a.  Lupin Pharma Is Not the Alter Ego of Lupin Ltd.

First, it should be noted that even when tortious conduct by a subsidiary exists, it "does

not alone justify an exercise of personal jurisdiction over the parent." *Sears, Roebuck & Co. v.*

*Sears plc*, 752 F. Supp. 1223, 1225 (D. Del. 1990) (hereinafter *"Sears II"*).  Hence, even if Lupin

Pharma "participated" in the filing of the ANDAs, by having one of its employees identified as

the "agent" of Lupin Ltd. for that specific purpose, that "artificial act" does not "justify an

exercise of personal jurisdiction over the parent," Lupin Ltd.

Second, there is no basis in this case for disregarding the corporate distinction between

the parent, Lupin Ltd., and its subsidiary, Lupin Pharma.  Delaware courts regularly decline to

"lightly set aside corporate formalities in order to hail a foreign corporation into this judicial

district." *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 274 (D.

Del. 2001).  In order for a court to ignore the boundaries between parent and subsidiary, plaintiff

must establish some "fraud, injustice or inequity in the use of the corporate form." *C.R. Bard,*

*Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998); *Applied Biosystems*, 772 F. Supp. at

1463.  Delaware courts look at a series of factors to determine whether the two corporations

maintain corporate formalities, including whether they have separate board of directors, separate

employees, separate accounting systems, separate bank accounts, and file separate tax returns.

*See C.R. Bard*, 997 F. Supp. at 558. Absent fraud in the corporate structure, a Delaware court is unlikely to exercise jurisdiction under the alter ego/piercing the corporate veil doctrine. *Id.* at 559.

As noted above, Lupin Pharma is a separate corporation, with separate stock and separate directors. V. Gupta Decl., ¶ 4. All of the corporate formalities are fully maintained. *Id.* Lupin Pharma files its own tax returns in the United States, and it has its own auditors. *Id.* ███████ ████████████████████████████████████████████████ *Id.* Its accounting in the United States is independently done, and ████████████████████████████ ███████████████████████████████████ *Id.* ¶ 4, 14. Lupin Pharma has complete control over all of its day-to-day operations, and it does not require any approval from or by Lupin Ltd. to engage in any transaction in the United States, other than an acquisition of another company or business entity. *Id.* ¶ 5. Lupin Ltd. does not direct Lupin Pharma to take any actions, either for Lupin Ltd. or for Lupin Pharma. *Id.* All dealings and transactions relating to the distribution of products in the United States are subject solely to the control and direction of Lupin Pharma. *Id.*

As further noted above, Vinita Gupta, Lupin Pharma's President, also serves as a non-executive member of the board of directors of Lupin Ltd. *Id.* ¶ 4. The courts have found that "[I]t is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Telcordia Techs., Inc. v. Alcatel S.A.,* C.A. No. 04-874-GMS, 2005 WL 1268061, at *3 (D. Del. May 27, 2005) (*quoting United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (citations omitted) (noting that it is a "well established principle...that directors and officers holding positions with a parent and it subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership")). The mere fact that Ms.

Gupta, President of Lupin Pharma, is also a member of the board of directors of Lupin Ltd. does

not, therefore, establish that all of the acts of Lupin Pharma, including any transactions it may

have had in Delaware, should be attributed to its parent, Lupin Ltd. *See Monsanto Co. v.*

*Syngenta Seeds, Inc.,* 443 F. Supp. 2d 636, 645 (D. Del. 2006); *Telcordia Techs., Inc. v. Alcatel,*

*S.A.,* C.A. No. 04-874-GMS, 2005 WL 1268061, at \*3 (D. Del. May 27, 2005).

A court can assert specific personal jurisdiction over "a parent company, for the acts of

its subsidiaries, to the extent that the actions of the subsidiaries are 'directed and controlled' by

the parent." *Sears II,* 752 F. Supp. at 1226 (D. Del. 1990) (*quoting Sears, Roebuck & Co. v.*

*Sears plc,* 744 F. Supp. 1297, 1306 (D. Del 1990); and *citing Altech Indus., Inc. v. Al Tech*

*Specialty Steel Corp.,* 542 F. Supp. 53 (D. Del. 1982)).  However, only the "precise conduct

shown to be instigated by the parent" can be attributed to the parent. *C.R. Bard,* 997 F. Supp. at

560; *see also Applied Biosystems,* 772 F. Supp. at 1464.  Moreover, a court cannot exercise

jurisdiction over claims against a parent unless the alleged violations by the non-Delaware

subsidiaries are sufficiently related to the conduct in Delaware. *Sears II,* 752 F. Supp. at 1226.

For jurisdiction to "arise from" an act, it must have been a "critical step in the chain of events"

resulting in the cause of action before the court. *Id.* at 1227.  It is the acts giving rise to the

claim, and not the nature of the claim, that determines whether a cause of action arises from

contacts within the forum. *Id.* In other words, there must be a causal connection between the act

or omission and the cause of action.

Here, of course, as noted above, Lupin Ltd. does not direct or control that acts of Lupin

Pharma. The complaint contains no facts on which a conclusion may be drawn that any such

direction or control exists. The "precise conduct" at issue here, the filing of the ANDAs, were

undertaken by the parent, not Lupin Pharma, and does not assist the plaintiffs in an argument that

Lupin Ltd. "directed or controlled" Lupin Pharma, even in that "act" in Maryland. The fact that

an employee of Lupin Pharma was identified as "agent" of Lupin Ltd. for the specific purpose of compliance with FDA requirements, does not transform Lupin Pharma into an agent of Lupin Ltd. for all purposes, or indicate that Lupin Ltd. exercised any direction or control over Lupin Pharma's activities, particularly its marketing of products that might be sold in Delaware. *See, e.g., Sears II*, 752 F. Supp. at 1225-26.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████. As shown, there is no factual basis for the bald assertions made in the complaint that Lupin Ltd. and Lupin Pharma "hold themselves out as a unitary entity," or that the activities of Lupin Pharma "are directed, controlled, and carried out by a single entity, namely, Lupin [Ltd.], headquartered in India." D.I. 1 ¶ 9. While Lupin Pharma ██████████████

███████████████████████████████████████████████████

█████████ it was and is not an "agent" of Lupin Ltd. for all purposes. As set forth below, it is simply inappropriate to pierce the corporate veil and attribute to Lupin Ltd. all of the acts and transactions of Lupin Pharma. Even if the complaint alleges that Lupin Pharma participated in the "artificial" act of alleged infringement, by acting as the FDA notice "agent" for purposes of the ANDA, that allegation, at most, provides a basis for proof that Lupin Pharma participated in a hypothetical "tort" in Maryland, not Delaware. It adds nothing to the Plaintiffs' basis for any assertion of specific jurisdiction over Lupin Ltd.

In sum, Lupin Pharma is not the alter ego of Lupin Ltd. Lupin Ltd. does not control Lupin Pharma, and Lupin Pharma is not a general agent for Lupin Ltd. There is no reason to pierce the corporate veil and attribute to Lupin Ltd. activities of Lupin Pharma, including activities that might be regarded as jurisdictional "acts."

**b.    Contacts with Delaware Are Not Sufficient to Warrant a Finding of General Jurisdiction Over Lupin Ltd.**

Although the Court need not consider the acts of Lupin Pharma, even if the Court did so, the complete lack of any connection between Lupin Ltd. and Delaware demonstrates that the contacts between Delaware and Lupin Ltd. are not sufficient to allow exercise of general jurisdiction over Lupin Ltd. This Court's decision in *Merck, supra*, is instructive. In *Merck*, this Court considered whether personal jurisdiction existed over Barr Laboratories in a Hatch-Waxman case. *Id., * 179 F. Supp. 2d 368. In that case, as here, the plaintiff, Merck, filed a complaint in Delaware, as well as an identical complaint in the Southern District of New York, alleging infringement of several patents included in the Orange Book, after Barr filed an ANDA and served appropriate notice on Merck. The complaint filed in Delaware, like the complaint here, was duly served. The complaint filed in the Southern District of New York was not served; just as the complaint filed by plaintiffs in Maryland was not served. Nonetheless, in the Southern District of New York, Barr answered and counterclaimed. *Id.* at 370. Similarly here, Lupin Ltd. and Lupin Pharma answered and counterclaimed in Maryland. As did the Lupin Defendants here, Barr filed a motion to dismiss for lack of personal jurisdiction and improper venue. *Id.* Unlike this case, in *Merck* the plaintiff also filed suit in Delaware against two other pharmaceutical manufacturers, which suits were pending at the time of Barr's motion. *Id.* Also, unlike this case, Barr had some minimal contacts with Delaware:  it sold products directly to four customers with total revenues of approximately $500,000 for each of two years; it had a sales manager for Delaware who made several visits to the state every year; it made direct sales to national mail order companies which sold to Delaware; it made yearly payments to Delaware Medicaid; it had a contract with a Delaware corporation; and it had a wholly owned Delaware subsidiary which did research and development of pharmaceuticals. *Id.* at 370-71. Despite these contacts with Delaware and despite evident reasons of judicial economy that might have

warranted consolidation of Barr's case with the two already pending, the Court granted Barr's

motion, effectively requiring that Merck pursue its claims against Barr in the Southern District of

New York.

Considering these facts, the *Merck* court concluded that general jurisdiction was lacking,

because the totality of Barr's contacts with Delaware did not reach the level of persistence and

substantiality required. *Id.* at 374. Rejecting Merck's argument that Barr was subject to general

jurisdiction, *id.* at 372, the court stated its conclusions, as follows:

> The Court concludes that Barr does not regularly do business in Delaware. Barr
> has no employees, local telephone listing, bank accounts, or real estate in
> Delaware. Barr has a license to sell pharmaceutical products in Delaware, but is
> not registered with the Secretary of State to do business in Delaware. Barr has
> one account manager for the existing Delaware customers, who visits Delaware at
> most three times per year. Moreover, the actions of LHSI, a Delaware entity with
> whom Barr has a contract, cannot be attributed to Barr because the Court is not
> persuaded that LHSI is an agent of Barr. (D.I. 26 at 4). Therefore, in the Court's
> view, Barr's contacts with Delaware, including the sale of drugs to Happy
> Harry's, are minimal and an insufficient basis to rest general jurisdiction upon.
>
> The Court further concludes that Barr does not solicit business in Delaware. Barr
> does not advertise in Delaware, nor does its National Account Manager for
> Delaware solicit new customers. Accordingly, the Court concludes that Barr's
> conduct does not amount to regularly doing business or soliciting business in
> Delaware.
>
> Finally, the Court must determine if Barr derives substantial revenue from
> services, or things used or consumed in Delaware. Although Delaware courts
> have broadly construed the term "substantial revenue," the Court concludes that
> Barr's revenue from things used or consumed in Delaware falls below the level
> required to exercise general jurisdiction. ... The Court is not persuaded that Barr's
> sales to corporations with national distribution, including Delaware, should be
> added to Barr's Delaware sales figures because the nexus is too attenuated.
> Currently, Barr's Delaware revenue, comprising less than 0.13% of total revenue,
> is not substantial enough to warrant an exercise of general jurisdiction.

*Id.* at 373 (*citing United States v. Consolidated Rail Corp.,* 674 F. Supp. 138, 144 n.4 (D. Del.

1987)).

Here, as in *Merck*, Lupin Ltd. "does not solicit business in Delaware," it "does not

advertise in Delaware, nor does its National Account Manager for Delaware solicit new

customers." *Merck*, 179 F. Supp. 2d at 373. Unlike Merck, Lupin Ltd. has no Delaware

subsidiary. Here, as in *Merck*, Lupin Ltd. does not regularly do business in Delaware; it has no

employees, local telephone listing, bank accounts, or real estate in Delaware. N. Gupta Decl., ¶¶

14-16. Although its subsidiary, Lupin Pharma, ███████████████████████

██████████████████████████████████████████████

████████ Lupin Ltd., like Barr, has no such license and is not registered. Lupin Ltd. does not

have even the few minor contacts with Delaware which were insufficient in *Merck* to find

personal jurisdiction. Lupin Ltd.'s contacts with Delaware are non-existent, and thus clearly an

insufficient basis upon which to rest general jurisdiction.

Even if the Court were to attribute Lupin Pharma's sales activities to Lupin Ltd.,

"including the sale of drugs to Happy Harry's," those sales activities "are minimal and an

insufficient basis to rest general jurisdiction upon." *Merck*, 179 F. Supp. 2d at 373. Lastly,

Lupin Ltd. derives no revenues from Delaware. N. Gupta Decl., ¶ 21. The revenue that Lupin

Pharma might realize "from things used or consumed in Delaware falls below the level required

to exercise general jurisdiction" over Lupin Ltd., even if the Court, *arguendo*, were to attribute

the sales of Lupin Pharma in Delaware to Lupin Ltd. *Merck*, 179 F. Supp. 2d at 373.

In *Merck*, the Court concluded that "Barr's contacts and revenue in Delaware are

minimal, and accordingly, insufficient to satisfy the requirements for jurisdiction under

§ 3104(c)(4) of the Delaware long-arm statute." *Id.* at 374. Here, too, where the contacts

between Lupin Ltd. and Delaware are even more remote, minimal, and essentially non-existent,

the Court should find that Lupin Ltd.'s contacts with Delaware are "insufficient to satisfy the

requirements for jurisdiction under ... the Delaware long-arm statute." *See id.* The Court should

find that any contacts that Lupin Ltd. might have with Delaware are insufficient to warrant a

finding of general jurisdiction over Lupin Ltd.

### 3.   Due Process

As noted above, any exercise of personal jurisdiction must be consistent with

constitutional requirements of Due Process. *Merck*, 179 F. Supp. 2d at 371 (citing *International*

*Shoe Co. v. Washington*, 326 U.S. 310 (1945)); *see also Viam Corp*, 84 F.3d at 427; *Hollyanne*,

199 F.3d at 1307; *Red Wing*, 148 F.3d at 1358; *Shamsuddin*, 346 F. Supp.2d at 807; *Zeneca*,

1996 WL 925640, at *2. As this Court noted in *Merck*:

> Due process requires that a defendant have certain minimum contacts with
> the forum state in order to ensure that the maintenance of the lawsuit does not
> offend "traditional notions of fair play and substantial justice." The United States
> Supreme Court has held that to maintain general jurisdiction over a foreign
> defendant, the facts must establish "continuous and systematic general business
> contacts" with the forum state. ... Furthermore, the Court of Appeals for the Third
> Circuit has held that a plaintiff must show significantly more than mere minimum
> contacts to establish general jurisdiction.

*Merck*, 179 F. Supp. 2d at 375 (*quoting International Shoe*, 326 U.S. at 316; *Helicopteros*, 466

U.S. at 416 (internal citations omitted)). The constitutionality of an exercise of personal

jurisdiction turns on whether the defendant has "purposefully directed" its activity toward the

forum state. *Applied Biosystems*, 772 F. Supp. at 1470. "If so, and if the litigation arises out of

those activities, the defendant may have established the requisite minimum contacts with the

forum despite the lack of any physical contacts." *Id.* The purposeful availment requirement

ensures that a "defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or attenuated contacts, or of the 'unilateral activity of another party or a third

person.'" *Sears I*, 744 F. Supp. at 1296 (*quoting Burger King Corp, v. Rudzewicz*, 471 U.S. 462,

476 (1985)); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Here, as in *Merck*, the Court should conclude, after "considering the contacts [Lupin

Ltd.] has with Delaware ... that the requirements of due process are not satisfied because [Lupin

Ltd.'s] business contacts with Delaware and its residents are not continuous and systematic." *Id.*

Lupin Ltd. has not "purposefully directed" its activity toward Delaware. It maintains no

presence of any kind in Delaware. ███████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████

     Lupin Ltd. does not manufacture, develop or test any products in Delaware. *Id.* ¶ 14.  It

does not ship or sell any products directly in Delaware, and does not store or warehouse any

products in Delaware. *Id.* ¶ 16.  Lupin Ltd. does not directly advertise, market, sell generic

products, or otherwise solicit sales in Delaware. *Id.* ¶¶ 16-18.  Lupin Ltd. has not entered into

any licensing agreements with any companies in Delaware, it is not registered with the Secretary

of State to do business in Delaware, and it is not licensed by the State of Delaware to sell drugs

in the state. *Id.* ¶ 20.  It does not specifically target Delaware for sale of its products, and it does

not directly derive any of its revenue from sales in Delaware. *Id.* ¶¶ 17, 21. ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

     As noted above, the activities by Lupin Ltd. in filing ANDA Nos. 90-446, 90-892, and

90-860 were not directed toward Delaware.  The filing of the ANDAs in Maryland does not

establish "the requisite minimum contacts with [Delaware] despite the lack of any physical

contacts" between Lupin Ltd. and Delaware. *Applied Biosystems*, 772 F. Supp. at 1470.  In the

absence of such systematic and continuous contacts with Delaware, and in the absence of any

purposeful availment of Delaware by Lupin Ltd., this suit is one in which that "defendant has

been haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or attenuated contacts,

or of the 'unilateral activity of another party or a third person.'" *Sears I*, 744 F. Supp. at 1296 (*quoting Burger King*, 471 U.S. at 476). This is not permitted under the Due Process clause.

Greater contacts than those evidenced by Lupin Ltd. were at issue in *Merck*. Yet, in that case, the Court concluded that "In light of Barr's insignificant contacts with Delaware the Court further concludes that Delaware has no interest in adjudicating this case." *Merck*, 179 F. Supp. 2d at 375. The *Merck* case, like this one, "does not involve Delaware related claims or Delaware plaintiffs." *Id.* Here, as in *Merck*, the Court should be "persuaded that this case should proceed in [Maryland] where [Abbott Laboratories and Abbott Respiratory LLC have] already filed an identical complaint, [Lupin Ltd. and Lupin Pharma have] counterclaimed," and where, because it is Lupin Pharma's principal place of business, no jurisdictional issues have been raised. *Id.* Here, as in *Merck*, the Court should conclude that the exercise of personal jurisdiction would not be consistent with constitutional requirements of Due Process, and it should dismiss the complaint in this case against Lupin Ltd., for lack of personal jurisdiction.

**B.      Transfer**

A trial court may decide a transfer motion, made under 28 U.S.C. §1404(a), without reaching or making any determination about the propriety of exercising personal jurisdiction over the parties. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) (extending *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962), decided under 28 U.S.C. §1406(a)). Here, this Court need not reach and decide the constitutional and statutory issues concerning the exercise of personal jurisdiction over Lupin Ltd. if it decides that this case should be transferred under 28 U.S.C. §1404(a). The transfer statute provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.*

As a threshold matter, the court must first determine if the plaintiff could have originally brought the case in the district to which transfer is sought. *See Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 361 (D. Del.1994); 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3845 (2008). In this case, since the plaintiffs chose to file an essentially identical complaint in the District of Maryland, the plaintiffs have admitted that this case could have been originally brought in the district to which transfer is sought. *Id.* Since the Lupin Defendants also have admitted or consented to jurisdiction in the District of Maryland, where Lupin Pharma's principal place of business is located, no question exists about the jurisdiction of that court over this matter or the parties to this matter.

Second, the Court must consider a non-exhaustive list of factors described by the Third Circuit.[9] The private interests that the Court should consider include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). The public interests that the Court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law. *Id. Cf. In re TS Tech*, 551 F.3d at 1320 (Fifth Circuit factors); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).

---

[9] Because a motion for transfer does not involve substantive issues of patent law, it would appear that this court must apply the law of the Third Circuit. *See In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (*citing Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003)).

In the Third Circuit, a plaintiff's choice of forum is entitled to "paramount consideration" and "should not be lightly disturbed." *Shutte v. Armco Steel Co.*, 431 F.2d 22, 25 (3d Cir. 1970). However, "while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d at 313. Nevertheless, in the Third Circuit, "[t]he burden is upon the movant to establish that the balance of interests strongly weighs in favor of transfer." *Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.*, C.A. No. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002) (*citing Continental Cas. Co. v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999)).

Evaluating and applying these standards, the Court should exercise its broad discretion, 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3847 (2008), and transfer this case to the District of Maryland. The claim in this case arose from acts that occurred in Maryland, that is, the filing of ANDA Nos. 90-446, 90-892, and 90-860. Those filings constitute the "artificial" acts that permit the filing of a claim under the Hatch-Waxman Act, 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(2)(A).

In determining the relative convenience of the different fora for each party, a court, not surprisingly, considers the residence of the parties. 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3849 (2008). Although Abbott Respiratory LLC is incorporated in Delaware, neither it nor Abbott Laboratories "reside" in this District. To the contrary, as noted above, both plaintiffs have their principal places of business in Illinois. Likewise, neither of the Lupin Defendants "resides" in this District. Delaware and Maryland are probably equally convenient or inconvenient for the Plaintiffs.

Lupin Pharma, however, has its principal place of business, and thus "resides," in Maryland. In evaluating the convenience of the parties, it must be admitted that the District of

Delaware is not greatly distant from Maryland, where Lupin "resides." Nevertheless, to the

extent that time and effort of Lupin Pharma's corporate employees must be expended in

defending this litigation, Maryland will afford a far more convenient forum. Maryland is

admittedly the Defendants' "home turf," that is, "the forum closest to the [Defendants']

residence or principal place of business which can exercise personal jurisdiction over the

Defendant[s] at the time the lawsuit is filed." *Continental Cas. Co.*, 61 F. Supp. 2d at 131 n.5

(*citing Affymetrix, Inc.* 28 F. Supp. 2d at 198 n.6).[10]

Hence, while this factor may not have "controlling" weight, it has been noted by the

commentators that transfer to a corporate defendant's place of business is particularly likely in

patent-infringement cases. 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3848 at

n.15, 16 (2008) (*citing, inter alia, Saint-Gobain Calmar, Inc. v. National Prods. Corp.*, 230 F.

Supp. 2d 655 (E.D. Pa. 2002) (center of gravity of alleged patent infringement is where

defendant maintains principal and only place of business)).[11] *See also General Instrument Corp.*,

---

[10]   The "home turf rule" is one ordinarily applied when considering the extent to which a
plaintiff's choice of forum should be accorded deference. The "home turf rule" is "merely a
short-hand way of saying that, under the balancing test inherent in any transfer analysis, the
weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater
the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix,
Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998) (*citing Burroughs Wellcome Co. v.
Giant Food Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975); *General Instrument Corp. v. Mostek
Corp.*, 417 F. Supp. 821, 822-23 (D. Del. 1976) (explaining *Burroughs*)). Under this rule,
"[w]here the forum selected by [a] plaintiff is connected with neither the plaintiff nor ... the
subject matter of the lawsuit, meeting the burden of showing sufficient inconvenience to tip
the 'balance' of convenience 'strongly in favor of [the] defendant' will ordinarily be less
difficult." *Affymetrix, Inc.*, 28 F. Supp. 2d at 199 (*quoting Burroughs*, 392 F. Supp 763
(*quoting Shutte*)).

[11]   In patent-infringement cases, "the 'preferred forum is that which is the center of gravity of
the accused activity.' . . . The 'center of gravity' for such a claim is in the district where the
alleged infringement occurred. In finding that 'center of gravity,' a district court 'ought to be
as close as possible to the milieu of the infringing device and the hub of activity centered
around its production.' . . . 'Appropriate considerations include the location of a product's
development, testing, research and production [and] the place where marketing and sales

(continued . . .)

417 F. Supp. at 822-23; *KAB Enter. Co. v. Ursich Elec. Prods. Inc.*, Civ. No. 06-4361, 2007 WL 1118308, at *2 (E.D. Pa. Apr. 13, 2007)). In this case, the convenience of the parties is a factor that weighs in favor of transfer of this case to Maryland.

The two remaining private *Jumara* factors, the convenience of the witnesses, to the extent that the witnesses may be unavailable for trial in one of the fora, and the location of books and records, to the extent that they may not be available in one of the fora, do not strongly weigh in favor of either Maryland or Delaware, although, for the same reasons set forth above, Maryland would be more convenient for Lupin Pharma.

Several of the public interests described in *Jumara* may well have a bearing on the question of transfer. First, at least one practical consideration could make the trial of this case easier, quicker, and less expensive if the case is transferred to Maryland: there is no issue of jurisdiction if the case is transferred. Many federal courts "have concluded that it conserves judicial resources, and furthers the interests of the parties, to transfer a case from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties." 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3849 (2008) (*citing Kahhan v. City of Fort Lauderdale*, 566 F. Supp. 736, 740 (E.D. Pa. 1983) and *X-Rail Sys., Inc. v. Norfolk & Western Ry. Co.*, 485 F. Supp. 553, 555 (D.N.J. 1980)). Moreover, the Lupin Defendants have filed a counterclaim in the District of Maryland. If transfer is denied here, the possibility exists that proceedings will go forward in two jurisdictions on closely related matters. At minimum, some litigation will undoubtedly ensue relating to the consolidation of claims in the Defendants' counterclaims with those pending in this Court.

---

decisions were made, rather than where limited sales activity has occurred.'. . ." *Saint-Gobain*, 230 F. Supp. 2d at 660 (*quoting Renzetti, Inc. v. D.H. Thompson, Inc.*, No. 96-cv-8520, 2007 WL 230806 (E.D. Pa. May 2, 1997), and *citing S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187-88 (N.D.Ill.1983); and *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)).

Finally, court congestion is a factor to be considered. In the 12 months ending September 30, 2008, the last period for which statistics have been reported by the Administrative Office of the Courts, http://www.uscourts.gov/judbus2008/contents.cfm, Delaware had four authorized judgeships, but only three United States District Judges. The median time interval from filing to disposition of civil cases terminated in Delaware, during the 12-month period ending September 30, 2008, was 11.2 months. In Maryland, it was 7.0 months. *See* Exhibit 3, attached. In the same period, the 29 civil cases disposed of by trial in Delaware were pending for a median time of 31.5 months. In Maryland, the 40 civil cases disposed of by trial in that period were pending for a median time of 23.0 months. *Id.* In the same 12-month period, the number of pending civil cases in Delaware decreased by 2.9%, while the number of terminated civil cases increased by 25.1%. In Maryland, the increase in civil cases was 2.1%, while the number of civil cases terminated decreased by 4.4%. *See* Exhibit 4, attached. In the same 12-month period, the District of Delaware had 187 new patent cases filed, 149 patent cases terminated, and 305 patent cases pending. In Maryland, in the same period, there were 34 new patent cases filed, 39 patent cases terminated, and 22 patent cases pending. *See* Exhibit 5, attached. In statistics recently released by the Court, the District of Delaware had 187 patent case filings in Fiscal Year 2008, an increase of 19%, amounting to 45 new patent cases for each authorized judgeship. *See D. Del. Continues to See Rise in Patent Filings*, http://www.delawareiplaw.com/d_del_news_and _events/. These statistics, on their face, suggest that the docket of the District of Delaware may well be more congested than that of the District of Maryland.

Even these statistics are not completely revealing since the District of Delaware, at least since mid-2008, has had a standing order pursuant to which at least twelve judges from other districts will be assigned one of every four cases filed in Delaware, at least for the conduct of pre-trial proceedings. *See* http://www.ded.uscourts.gov/StandingOrdersMain.htm. *See also Six*

*New Jersey District Judges Designated to Sit in Delaware*, August 11, 2008,

http://www.delawareiplaw.com/2008/08/.

While the Court should not consider transfer solely for its own convenience, the parties

have a legitimate interest in a speedy resolution of their controversy.  As one court in another

jurisdiction has said about its own overcrowding with cases, at a different time, "Important in

connection with the interest of justice involving the element of expedition of the judicial

processes and determination resulting therefrom, in the court's opinion, is the factor of the delay

necessarily incident to the highly congested state of the docket in this judicial district.  The

crowded condition of the calendar and the pressure of continuous trials and other judicial

proceedings in this court ... are too well known to require elaboration ...." *United States v. Swift*

*& Co.*, 158 F. Supp. 551, 559 (D.D.C. 1958).  Here, too, the Defendants respectfully suggest, the

degree of crowding of the Court's docket is an important consideration in connection with the

"public interest" element of 28 U.S.C. § 1404(a).

When all of the public and private factors are considered, weighed against the Plaintiffs'

choice of filing essentially identical complaints on the same day in both this forum and in the

District of Maryland, and evaluated in light of the lack of any meaningful connection between

any of the parties and this District, the Defendants respectfully submit that the Court should

exercise its discretion and transfer this case for all further proceedings to the District of

Maryland.

## IV.    CONCLUSION

For the foregoing reasons, the Defendant, Lupin Ltd. respectfully submits that, pursuant

to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure, the Complaint filed against

Lupin Ltd. in this case should be dismissed by the Court for want of personal jurisdiction over

Lupin Ltd. and for improper venue.  For the foregoing reasons, the Defendants, Lupin Ltd. and

Lupin Pharmaceuticals, Inc., respectfully submit that this case should be transferred, pursuant to

28 U.S.C. §1404(a), to the District of Maryland, in which an action among the same parties is

already pending.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

April 23, 2009

Karen L. Pascale (# 2903) *[kpascale@ycst.com]*
Megan C. Haney (#5016) *[mhaney@ycst.com]*
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600

*Attorneys for Defendants, Lupin Limited and
Lupin Pharmaceuticals, Inc.*

*Of Counsel:*

Barry S. White
Steven M. Amundson
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on April 30, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham [mgraham@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNEL LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19801

I further certify that on April 30, 2009, I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### *By E-Mail*
>
> William F. Lee [william.lee@wilmerhale.com]
> Hollie L. Baker [hollie.baker@wilmerhale.com]
> Vinita Ferrera [vinita.ferrera@wilmerhale.com]
> WILMER CUTLER PICKERING HALE AND DORR LLP
> 60 State Street
> Boston, MA  02109

> YOUNG CONAWAY STARGATT & TAYLOR LLP
>
> */s/ Karen L. Pascale*
>
> ---
> Karen L. Pascale (# 2903) *[kpascale@ycst.com]*
> Megan C. Haney (#4489) *[mhaney@ycst.com]*
> The Brandywine Building
> 1000 West St., 17th Floor
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> Telephone:  (302) 571-6600
>
> *Attorneys for Defendants, Lupin Limited and*
> *Lupin Pharmaceuticals, Inc.*