IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT LABORATORIES and ABBOTT RESPIRATORY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LUPIN LIMITED and LUPIN PHARMACEUTICALS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) C.A. No. 09-152 (LPS) ) ) ) ) ) ) ) |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE DEFENSES NOT DISCLOSED IN DEFENDANTS' INTERROGATORY RESPONSES AND TO STRIKE DEFENSES NOT CONTAINED IN DEFENDANTS' <u>PARAGRAPH IV LETTER AND DISMISS RELATED COUNTERCLAIMS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
  *Attorneys for Abbott Laboratories*
  *and Abbott Respiratory LLC*

OF COUNSEL:

William F. Lee
Hollie L. Baker
Vinita Ferrera
Christopher R. Noyes
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

September 27, 2010

- i -

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

I.    INTRODUCTION .................................................................................................1

II.    BACKGROUND ...................................................................................................2

III.    ARGUMENT .........................................................................................................6

    A.    Lupin Unjustifiably Failed to Disclose Its Invalidity Arguments During Discovery in a Timely Fashion. ....................................6

    B.    Lupin Failed to Comply with the Hatch-Waxman Act's Notice Provision. ...................................................................................9

IV.    CONCLUSION ....................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Labs. v. Apotex Inc.*,
   No. 09-7968, 2010 WL 2899113 (N.D. Ill. July 9, 2010) ........................................................10

*Abbott Labs. v. Novopharm Ltd.*,
   104 F.3d 1305 (Fed. Cir. 1997) ..............................................................................................11

*Abbott Labs. v. Sandoz Inc.*,
   Nos. 09-215, 09-972, Order (D. Del. Sept. 20, 2010) ........................................................2, 10

*Andrx Pharms., Inc. v. Biovail Corp.*,
   276 F.3d 1368 (Fed. Cir. 2002) ......................................................................................... 10-11

*AstraZeneca AB v. Mut. Pharms. Co.*,
   221 F. Supp. 2d 528 (E.D. Pa. 2002) .....................................................................................11

*ATD Corp. v. Lydall, Inc.*,
   159 F.3d 534 (Fed. Cir. 1998) ..................................................................................................7

*Biovail Labs., Inc. v. Torpharm, Inc.*,
   No. 01-9008, 2003 WL 21254417 (N.D. Ill. May 29, 2003) ..................................................10

*Bridgestone Sports Co. v. Acushnet Co.*,
   No. 05-132, 2007 WL 521894 (D. Del. Feb. 15, 2007) ............................................................7

*Lab. Skin Care, Inc. v. Limited Brands, Inc.*,
   661 F. Supp. 2d 473 (D. Del. 2009) ......................................................................................6, 8

*Minemyer v. B-Roc Representatives, Inc.*,
   No. 07-1763, 2009 WL 3757378 (N.D. Ill. Oct. 29, 2009) ......................................................7

*Minnesota Mining & Mfg. Co. v. Barr Labs., Inc.*
   ("*3M*"), 289 F.3d 775 (Fed. Cir. 2002) ............................................................................ Passim

*Mylan Pharms., Inc. v. Thompson*,
   268 F.3d 1323 (Fed. Cir. 2001) ..............................................................................................10

*Praxair, Inc. v. ATMI, Inc.*,
   No. 03-1158, 2005 WL 3159054 (D. Del. Nov. 28, 2005) .......................................................8

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 98-3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000) ................................................. 11-12

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ................................................................................... 11

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    No. 03-8253, 2005 WL 1457696 (S.D.N.Y. June 15, 2005) ........................................ 7

**RULES AND STATUTES**

21 C.F.R. § 314. ............................................................................................................ 1, 14

21 U.S.C. § 355 ............................................................................................................... 1, 9

35 U.S.C. § 102 ............................................................................................................... 3-5

35 U.S.C. § 103 ............................................................................................................... 4-5

35 U.S.C. § 112 ............................................................................................................. 5, 12

35 U.S.C. § 271 ................................................................................................................... 9

59 Fed. Reg. 50338 (Oct. 3, 1994) .................................................................................... 14

Fed. R. Civ. P. 37 ................................................................................................................ 6

I.     **INTRODUCTION**

Plaintiffs Abbott Laboratories and Abbott Respiratory LLC (collectively, "Abbott") seek to preclude Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively, "Lupin") from asserting invalidity defenses and certain non-infringement defenses for which Lupin failed to provide proper notice over the course of this litigation.

First, Lupin ignored its disclosure obligations during fact discovery. In particular, Lupin failed to respond fully and timely to interrogatories served by Abbott requesting that Lupin identify the prior art and invalidity arguments on which it intends to rely and omitted two invalidity arguments that it now apparently will make: (1) that several of the patents-in-suit are obvious based on a purported prior art reference, European Patent Publication 643,965 ("EP '965"); and (2) that one of the patents-in-suit, U.S. Patent No. 6,080,428 ("the '428 patent"), would have been obvious in light of the later-filed U.S. Patent No. 6,129,930 ("the '930 patent"). Lupin also failed to include in any of its interrogatory responses at least a dozen other purported prior art references on which it now also intends to rely. Abbott first learned of these arguments upon receipt of Lupin's opening expert reports, served on September 1, 2010, more than three-and-a-half months after service of its supplemental responses to contention interrogatories, leaving Abbott no opportunity to conduct fact discovery regarding these defenses and only one month to respond. Therefore, Abbott requests that the Court preclude Lupin from relying at trial on invalidity arguments and prior art not disclosed in any of its interrogatory responses.

Second, Lupin failed to comply with its statutory obligation under the Hatch-Waxman Act to provide a "detailed statement" setting forth the basis of its invalidity and non-infringement defenses in its notice to Abbott under the Hatch-Waxman Act, commonly known as a "Paragraph IV" letter. *See* 21 U.S.C. § 355(j)(2)(B)(iv)(II); *see also* 21 C.F.R. § 314.95(c)(6). Here,

Lupin's Paragraph IV letter did not provide *any* statement of Lupin's invalidity defenses, much less a "detailed statement," and identified only two non-infringement defenses.

Abbott acknowledges that the Federal Circuit has held that a district court "cannot, decide [the] question of compliance with the paragraph IV certification requirements." *Minnesota Mining & Mfg. Co. v. Barr Labs., Inc.* ("*3M*"), 289 F.3d 775, 783 (Fed. Cir. 2002). Based on the ruling of *3M*, Judge Sleet recently denied a motion by Abbott seeking an order that the generic drug manufacturer be required to re-file its Paragraph IV letter or, in the alternative, to strike defenses not contained in the Paragraph IV letter. *See Abbott Labs. v. Sandoz Inc.*, Nos. 09-215, 09-972, Order (D. Del. Sept. 20, 2010) (attached as Exhibit 1). Nevertheless, there are distinctions between the present case and *3M* and good reasons for reconsidering *3M*'s broad holding, which leaves patent owners without recourse to enforce the Hatch-Waxman Act's notice requirement and thereby allows generic drug manufacturers to exploit the Abbreviated New Drug Application ("ANDA") process contrary to the goals of the statute. Therefore, Abbott brings this motion to strike Lupin's defenses not contained within its Paragraph IV letter and dismiss Lupin's related counterclaims, and in so doing, preserve its right to seek reconsideration of this issue on appeal if necessary.

## II. BACKGROUND

Abbott owns the seven patents-in-suit: the '428 patent, the '930 patent, and U.S. Patent Nos. 7,011,848 ("the '848 patent"), 6,406,715 ("the '715 patent"), 6,746,691 ("the '691 patent"), 6,676,967 ("the '967 patent"), and 6,818,229 ("the '229 patent") (collectively, the "NIASPAN® patents"). These patents cover niacin-based formulations and methods of treatment, which reduce "bad" cholesterol while increasing "good" cholesterol without causing the uncomfortable and dangerous side effects of prior art niacin therapies. The claims of the NIASPAN® patents are embodied in Abbott's prescription drug NIASPAN®.

In late 2008, Lupin filed three ANDAs seeking FDA approval to market generic versions of NIASPAN®. On January 22, 2009, Lupin sent Abbott a Paragraph IV letter (attached as Exhibit 2), purportedly setting forth a "detailed statement" of Lupin's invalidity and non-infringement positions. That letter failed to identify a single prior art reference or other factual or legal basis for finding that any claims of the NIASPAN® patents are invalid. In addition, it only identified two non-infringement positions.[1]

On March 6, 2009, Abbott sued Lupin for patent infringement. Lupin answered on March 26, 2009 and asserted without further elaboration non-infringement defenses, as well as invalidity defenses under 35 U.S.C. §§ 102, 103, and/or 112. (Answer at 11, Dkt. 7.)

On July 31, 2009, Abbott served its first set of interrogatories, requesting, *inter alia*, that Lupin state the basis for its non-infringement and invalidity defenses and identify any prior art on which it intends to rely. (*See* Abbott's First Set of Interrogatories to Defendants Lupin Limited and Lupin Pharmaceuticals, Inc., Interrogatory Nos. 4-11, at 4-8, attached as Exhibit 3.) Lupin responded to Abbott's first set of interrogatories on September 4, 2009. (*See* Lupin's Resp. to Abbott's First Set of Interrogs., attached as Exhibit 4.) With respect to infringement, Lupin's response simply referred to the non-infringement arguments in its Paragraph IV letter.

---

[1] More specifically, the letter explained Lupin's position that, during prosecution, the patentee had purportedly disclaimed compositions containing an internal hydrophobic component, and because Lupin's proposed generic formulations do contain such a component, they do not infringe any claim of the NIASPAN® patents. (Ex. 2 at 30-36.) The letter further stated that Lupin's proposed generic products do not infringe the '229 patent because certain pharmacokinetic parameters for Lupin's products are purportedly outside the claimed ranges. (*Id.* at 33.) As to the six other NIASPAN® patents, Lupin's Paragraph IV letter contained *no* non-infringement argument except for the argument based upon the alleged prosecution disclaimer.

On June 18, 2010, this Court issued a claim construction ruling rejecting Lupin's prosecution disclaimer argument, effectively leaving Lupin with a non-infringement argument as to only the '229 patent. (*See* Report & Recommendation Regarding Claim Construction at 23-34, Dkt. 95; *see also* Order Adopting Report & Recommendation at 2, Dkt. 105.)

(*Id.* at 10-11.)  With respect to validity, Lupin's response purported to incorporate by reference invalidity arguments set forth in eight expert reports submitted during a prior litigation.[2]  (*Id.* at 12-22.)  Lupin's response, however, failed to identify any particular invalidity argument or prior art reference from those expert reports on which it intended to rely.

Upon receiving leave from the Court, Lupin counterclaimed on September 24, 2009, seeking a declaratory judgment of non-infringement and invalidity.  (Countercl. ¶¶ 18-27, Dkt. 36.)  Lupin's counterclaim added nothing new to the non-infringement defenses stated in its Paragraph IV letter, answer, and interrogatory responses.  With respect to invalidity, Lupin's counterclaim stated only that "clinical trials conducted by Kos Pharmaceuticals, Inc. render the patents invalid as anticipated under [35 U.S.C.] § 102(b) or render the claimed subject matter obvious under [35 U.S.C.] § 103(a)."  (*Id.* ¶ 24.)

On April 22, 2010, Lupin served supplemental responses to Abbott's first set of interrogatories and asserted new non-infringement and invalidity positions.[3]  (*See* Lupin's First Suppl. Resp. to Abbott's Interrog. Nos. 4-10 & 12, attached as Exhibit 5.)  In addition to repeating the non-infringement positions in the Paragraph IV letter (*id.* at 4-11), Lupin also asserted that its proposed formulations do not meet certain pharmacokinetic and dosage amount

---

[2] Kos Pharmaceuticals, Inc. ("Kos") owned the NIASPAN® patents before Abbott acquired Kos in 2006.  In March 2002, Kos sued Barr Laboratories, Inc. ("Barr") for infringement of certain of the NIASPAN® patents after Barr filed an ANDA seeking to market generic versions of NIASPAN®.  *See Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc.*, Nos. 02-1683 *et al.*, (S.D.N.Y.).  The litigation between Kos and Barr settled in 2005, after the parties had exchanged several rounds of expert reports.

[3] The Court's initial scheduling order required the parties to complete their responses to contention interrogatories by December 18, 2009.  The parties subsequently agreed to extend that deadline until April 22, 2010, with a further deadline of May 12, 2010 for certain additional claims of the NIASPAN® patents as to which Abbott had asserted infringement on April 12, 2010.

limitations for the '967 patent, as well as certain dosage amount limitations for the '229 patent (*id.* at 10-11).

Regarding invalidity, Lupin asserted that each of the NIASPAN® patents was anticipated and/or obvious under 35 U.S.C. § 102(b) or 35 U.S.C. § 103 "because individuals involved in clinical trials 89/04, 91/02, 91/04, and 91/05 with no confidentiality obligations used Niaspan as specified in the claims and those uses occurred outside the study centers between December 31, 1990 and the critical date" for each of the NIASPAN® patents. (*Id.* at 15-24, 25-27, 28, 32, 45, 48-49, and 50-52.) In addition, Lupin argued for the first time that each of the NIASPAN® patents, with the exception of the '229 and '715 patents, would have been obvious in light of U.S. Patent No. 5,268,181 ("the O'Neill patent") and U.S. Patent No. 5,126,145 ("the Evenstad patent"). (*Id.* at 24, 27, 43-45, 46-48, and 52.) Lupin further asserted for the first time that the '715, '229, '967, and '691 patents would have been obvious in light of a 1996 article by Morgan. (*Id.* at 28-29, 32, 46, and 49.) Finally, Lupin identified, for the first time, indefiniteness and nonenablement arguments under 35 U.S.C. § 112 directed at the '715, '967, '691, and '229 patents. (*Id.* at 30-31, 43-45, 47-48, and 49.)

On May 12, 2010, Lupin served a second supplemental interrogatory response in which it argued that its products do not meet certain limitations for several newly-asserted claims in the '691, '967, and '848 patents.[4] (*See* Lupin's Second Supp. Resp. to Interrog. Nos. 4-10 at 11-14, attached as Exhibit 6.) In addition, Lupin argued that the newly-asserted claims of the '691 and '967 patents were invalid for the same reasons set forth in its April 22, 2010 First Supplemental Response to Abbott's Interrogatory No. 6. (*Id.* at 58-64.)

---

[4] Abbott informed Lupin on April 12, 2010 that, in addition to the claims already identified, it would assert infringement of claims 1 and 3 of both the '967 and '691 patents, as well as claim 7 of the '848 patent.

On September 1, 2010, more than three-and-a-half months after it last supplemented its contention interrogatory responses and more than seven weeks after the last court-ordered fact discovery deadline (*i.e.*, the deadline for service of requests for admission), Lupin served Abbott with its opening expert reports on invalidity. In arguing that the NIASPAN® patents would have been obvious, Lupin's experts for the first time cited EP '965, which is the European counterpart to the parent application to the NIASPAN® patents, as well as at least a dozen other purported prior art references that were not disclosed in Lupin's Paragraph IV letter or its various interrogatory responses, including publications by Figge, Neuvonen, Rifkind, Mrocheck, Fumagalli, Lieberman, Miller, Martin, and Altschul, as well as Adult Treatment Panels I, II, and III (collectively, "the non-disclosed publications"). Lupin's experts also argue, for the first time, that the '428 patent would have been obvious in light of the '930 patent.

### III. ARGUMENT

    **A.  Lupin Unjustifiably Failed to Disclose Its Invalidity Arguments During Discovery in a Timely Fashion.**

Abbott requests that the Court preclude Lupin from asserting the invalidity arguments and prior art presented for the first time in its opening expert reports.

Under Federal Rule of Civil Procedure 37(c)(1), a district court may preclude a party from relying on information that it failed to disclose in its interrogatory responses, unless the failure to disclose was substantially justified or is harmless. Applying Rule 37(c), courts – including the District of Delaware – have precluded defendants from relying on prior art references or invalidity defenses that were not disclosed in a timely fashion. *See Lab. Skin Care, Inc. v. Limited Brands, Inc.*, 661 F. Supp. 2d 473, 479 (D. Del. 2009) (precluding the defendant from relying on a prior art reference it failed to meaningfully identify in its interrogatory responses); *Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 WL 521894, at *5 (D.

Del. Feb. 15, 2007) (precluding the defendant from relying on invalidity defenses not disclosed in its interrogatory responses); *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998) (affirming the district court's decision to preclude the defendant from relying on prior art not disclosed during fact discovery); *Minemyer v. B-Roc Representatives, Inc.*, No. 07-1763, 2009 WL 3757378, at *9 (N.D. Ill. Oct. 29, 2009) (excluding prior art references not disclosed during fact discovery); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, No. 03-8253, 2005 WL 1457696, at *1 (S.D.N.Y. June 15, 2005) (preventing an ANDA applicant from asserting an obviousness defense that it articulated for the first time after the close of fact discovery).

Lupin's invalidity arguments based on EP '965, the '930 patent, and the other non-disclosed publications are indisputably untimely, coming months after Lupin's last supplementation of contention interrogatories in May 2010 and well after the last court-scheduled fact discovery deadline in July 2010.

Lupin's failure to disclose in its interrogatory responses arguments based on EP '965, the '930 patent, and the non-disclosed publications is unjustifiable. EP '965 and the other non-disclosed publications are publicly available prior art. In addition, Abbott produced EP '965 and several of the other non-disclosed publications during discovery. Likewise, Lupin has known about the '930 patent from the outset of this case; it is one of the NIASPAN® patents asserted in this action. Thus, Lupin could have raised obviousness arguments based on any of these references months ago, but chose not to do so until now. Indeed, Lupin was likely aware of these references long ago given that it has an "IP Group" that, early in the process of developing a generic drug, runs patent searches for "[a]ll of the ANDAs filed by Lupin" (*see* September 10, 2010 Mumtaz Dep. Tr. at 45, attached as Exhibit 7) and shares the results of its searches with

patent counsel who assesses Lupin's potential non-infringement and invalidity positions (*id.* at 89).

The fact that Abbott was aware of EP '965, the '930 patent, and several of the non-disclosed publications does not excuse Lupin's failure to disclose its intention to assert invalidity arguments based on those references. In fact, on similar facts, one court in this district held:

> Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference. It is undisputed that the two references at issue, and the intent to rely on them for invalidating the asserted claims, were not disclosed to plaintiffs by defendants until after the close of fact discovery. Therefore, these references are excluded from defendants' invalidity case.

*Praxair, Inc. v. ATMI, Inc.*, No. 03-1158, 2005 WL 3159054, at *4 (D. Del. Nov. 28, 2005).

Lupin's incorporation by reference of the eight expert reports served in prior litigation between different parties is likewise insufficient to satisfy its disclosure requirements. As at least one other judge in this district has recognized, a greater level of specificity is required to put a plaintiff on notice of the defendant's invalidity defenses. *See, e.g.*, *Lab. Skin Care*, 661 F. Supp. 2d at 479 (precluding a defendant from advancing an invalidity argument based on a particular prior art reference that, although disclosed, was not specifically identified within the 1500 pages of documents identified only by Bates number in the defendant's interrogatory responses).

Lupin's late disclosure of its obviousness arguments based on EP '965, the '930 patent, and the non-disclosed publications has unfairly prejudiced Abbott. Due to Lupin's failure to disclose its invalidity positions during fact discovery, Abbott has had only one month to analyze those references and formulate its responses to those arguments in rebuttal expert reports (currently due to be served on October 1, 2010). Moreover, with trial of this case scheduled to begin on January 24, 2011, an extension of expert discovery to permit Abbott additional time to

investigate and analyze these new arguments is not feasible. Thus, to prevent the unfair prejudice to Abbott resulting from Lupin's unjustified, untimely disclosures, Abbott respectfully requests that the Court preclude Lupin from advancing invalidity arguments based on EP '965, '930 patent, and the non-disclosed publications in this litigation.

### B. Lupin Failed to Comply with the Hatch-Waxman Act's Notice Provision.

Lupin's failure to comply with its discovery obligations is consistent with its pattern of nondisclosure in this case. Even prior to the filing of this lawsuit, Lupin ignored its statutory obligation to provide the requisite "detailed statement" of its invalidity and non-infringement positions in its Paragraph IV letter.[5] *See* 21 U.S.C. § 355(j)(2)(B)(iv)(II). Rather, Lupin's Paragraph IV letter set forth only two arguments, one of which applied to only one of the seven NIASPAN® patents, as to why its proposed generic formulations would not infringe and should be permitted to enter the market prior to the expiration of the NIASPAN® patents. *See supra* at 3 & n.1. Moreover, Lupin's Paragraph IV letter contained *no* statement whatsoever, let alone a "detailed statement," identifying the legal and factual basis for any assertion that the claims of the NIASPAN® patents are invalid. Yet Lupin now intends to challenge the validity of the NIASPAN® patents on numerous grounds. *See supra* at 3-6.

---

[5] A generic drug manufacturer's service of a Paragraph IV letter triggers an important process that affects the timing of the FDA's approval of the ANDA. The service of a Paragraph IV letter provides the patent owner with a cause of action for patent infringement. *See* 35 U.S.C. § 271(e). If the patent owner sues for infringement within forty-five days of receiving the generic drug manufacturer's Paragraph IV letter, approval of the ANDA will not become effective until at least thirty months from the date that the patent owner received the notice, unless a final court determination of non-infringement or invalidity is reached earlier in the infringement suit or the court otherwise orders a longer or shorter period. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

Here, Abbott sued Lupin within forty-five days of receiving Lupin's Paragraph IV letter, triggering a thirty-month stay for the approval of Lupin's ANDAs (currently set to expire July 23, 2011).

In *3M*, the Federal Circuit held that "§ 355(j)(2)(B) [requiring a Paragraph IV certification to set forth a 'detailed statement' of noninfringement and invalidity defenses] cannot be enforced by a private party in a patent infringement action." 289 F.3d at 777. While the *3M* decision can be read only to preclude a district court from entering an order that would interfere with the FDA's authority under the Hatch-Waxman Act, a recent order from the District of Delaware applies *3M* to deny the patent holder's request to require the generic company to file a new Paragraph IV letter or in to alternative to strike the generic drug manufacturer's defenses not contained in its Paragraph IV letter. *See Abbott Labs. v. Sandoz Inc.*, Nos. 09-215, 09-972, Order (D. Del. Sept. 20, 2010) (Ex. 1).[6] Nevertheless in light of the significant procedural and policy implications of the *3M* decision (and the decisions of the district courts purporting to follow *3M*), Abbott brings this motion respectfully requesting that the Court consider whether *3M* controls in the particular circumstances of this case, and at minimum, to preserve its right to seek reconsideration of this issue on appeal, if necessary.

As an initial matter, *3M*'s holding should not apply where, as here, the patent owner raises the issue of compliance with the Hatch-Waxman Act within the context of a patent infringement suit. *3M*'s holding was driven by prior decisions concluding that a private right of action could not be brought under the Hatch-Waxman Act where the "cause of action was not tied to any recognized patent infringement defense." *3M*, 289 F.3d at 782 (citing *Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323 (Fed. Cir. 2001) and *Andrx Pharms., Inc. v. Biovail*

---

[6] *See also Abbott Labs. v. Apotex Inc.*, No. 09-7968, 2010 WL 2899113, at *3 (N.D. Ill. July 9, 2010) (declining to order the ANDA applicant to serve a new Paragraph IV letter stating all of its defenses, which would have restarted the statutory thirty-month litigation stay or, in the alternative, to strike the defenses not stated in the Paragraph IV letter); *Biovail Labs., Inc. v. Torpharm, Inc.*, No. 01-9008, 2003 WL 21254417, at *2 (N.D. Ill. May 29, 2003) (striking portions of the complaint that sought an order delaying approval of the ANDA until the expiration of the patents-in-suit on the basis that the Paragraph IV letter was deficient).

*Corp.*, 276 F.3d 1368 (Fed. Cir. 2002)).[7] The patent infringement action in *3M* had already been dismissed with prejudice before the patentee sought review of the Paragraph IV letter. *Id.* at 780. Accordingly, all live patent issues had been extinguished in that case.

Here, in contrast, a live patent dispute remains, and neither the reasoning nor the underlying policy concerns implicating *3M*'s holding apply. Indeed, within the context of a live patent dispute, the Federal Circuit has endorsed consideration of the disclosures contained in the generic drug manufacturer's Paragraph IV letter for certain purposes related to the litigation, such as the assessment of attorneys' fees. *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008) (upholding the award of attorneys' fees due to filing of "baseless certification letters"); *see also AstraZeneca AB v. Mut. Pharms. Co.*, 221 F. Supp. 2d 528, 533-34 (E.D. Pa. 2002) (noting that an ANDA applicant's "conduct in sending an incomplete Paragraph IV notice to Astra has been far from exemplary"). Therefore, consideration of the adequacy of a generic company's Paragraph IV certification for purposes of determining the scope of an ongoing patent litigation or evaluating a party's good faith in the litigation should be permitted even under *3M*.

Of course, a generic manufacturer need not state all of its defenses in its Paragraph IV letter if it could not have known of them without discovery. *See, e.g.*, *SmithKline Beecham*

---

[7] In *Mylan*, the generic drug manufacturer sought a declaratory judgment that the patent owner had improperly listed its patent in the FDA's Orange Book, "in essence an attempt to assert a private right of action for 'delisting.'" 268 F.3d at 1332. The Federal Circuit dismissed the generic drug manufacturer's suit because it was not tied to a suit for patent infringement or any cause of action provided under the Hatch-Waxman Act. *Id.* at 1330-32. Yet the Federal Circuit has recognized that, as part of its inherent power to enforce a judgment, a court may order the delisting of a patent in the context of a properly filed patent infringement suit. *See Abbott Labs. v. Novopharm Ltd.*, 104 F.3d 1305, 1309 (Fed. Cir. 1997).

Likewise, in *Andrx*, the Federal Circuit held that a court cannot shorten the length of the thirty-month stay under the Hatch-Waxman Act owing to the patent owner's misconduct before the FDA because judicial interference with the FDA's process under those circumstances was not provided under the statute. 276 F.3d at 1376.

*Corp. v. Apotex Corp.*, No. 98-3952, 2000 WL 116082, at *7 (N.D. Ill. Jan. 24, 2000) (allowing the generic manufacturer to add an invalidity defense and an unenforceability defense it learned for the first time through discovery). Under those circumstances, the generic manufacturer should not be limited to the defenses presented in its Paragraph IV letter.

But that is not this case. Here, Lupin asserted two non-infringement defenses – one of which has been rendered moot by this Court's claim construction ruling and the other of which applies only to one patent – and ***no*** invalidity defenses, even though all of these defenses were available to Lupin at the time it submitted its Paragraph IV letter, even without the benefit of any discovery. Lupin had access to the patents and their file histories, which are public documents. And information regarding Lupin's products and their intended uses were uniquely within Lupin's control. Lupin's failure to assert all of its non-infringement defenses in its Paragraph IV letter is therefore inexcusable.

Likewise, Lupin had all information it needed to assert its invalidity positions at the time it filed its Paragraph IV letter.[8] Some of Lupin's invalidity defenses – for example, its indefiniteness and nonenablement arguments under 35 U.S.C. § 112 – do not even require reference to anything beyond the face of the patent to assert. And Lupin's anticipation and obviousness arguments are based on patents and publications to which Lupin had access. Indeed, the prosecution histories of the patents-in-suit discuss some of the references on which Lupin now relies for its invalidity arguments. In particular, the O'Neill patent—which Lupin

---

8   As one of the defenses not included in its Paragraph IV letter, Lupin now asserts that the NIASPAN® patents are invalid due to the purported public use of NIASPAN® during clinical trials. Although the details of the clinical trials upon which Lupin bases this defense are confidential, this public use argument was discussed extensively in the expert reports in the *Kos v. Barr* litigation, which are publicly available from the PTO in the file histories of several related applications to the NIASPAN® patents. Lupin evidently obtained these expert reports from the PTO and reviewed them prior to filing its ANDAs. (*See* Ex. 7 at 146-47.)

now asserts renders the claimed invention obvious—was the reason for the patentee's allegedly disclaiming arguments during prosecution of the '428 and '930 patents. Lupin knew about the O'Neill patent when it filed its Paragraph IV letter, as the primary argument in its Paragraph IV letter relates to the alleged prosecution disclaimer that purportedly arose as a result of the patentee's efforts to distinguish the O'Neill patent. Indeed, Lupin has admitted that it knew about the O'Neill and Evenstad patents "early on" in its development of its generic versions of NIASPAN®. (*See* Ex. 7 at 149, 151.) Nevertheless, Lupin delayed fifteen months after serving its Paragraph IV letter before first asserting its invalidity arguments relating to the O'Neill and Evenstad patents, or any other prior art references to which it had access, depriving Abbott of a full and fair opportunity to consider and formulate rebuttal to these arguments.[9] In short, the egregious nature of Lupin's non-disclosure of its non-infringement defenses and invalidity defenses cannot be overlooked.

Preventing generic drug manufacturers from later asserting in a patent infringement litigation defenses they could have raised in their Paragraph IV letters is the only way to obtain compliance with the Hatch-Waxman Act's "detailed statement" requirement. Otherwise, patentees are left without any recourse to challenge non-compliance with the Hatch-Waxman Act's notice requirements, and there is no deterrent against such noncompliance. In *3M,* the Federal Circuit denied the requested relief, concluding that issues related to the sufficiency of a Paragraph IV Letter are appropriately raised before the FDA and thereafter in a proceeding brought under the Administrative Procedure Act. 289 F.3d at 783. However, as articulated by Judge Gajarsa in his concurrence in *3M,* the FDA has not only declined to accept such a

---

[9] Lupin also could cure its defective Paragraph IV letter by serving a new letter that sets forth the defenses it intends to rely on in this litigation, thereby resetting the statutory thirty-month litigation stay.

responsibility, the FDA has explicitly directed the issue to be resolved between the litigating parties. *Id.* at 787 (Gajarsa, J. concurring) ("Indeed the FDA has stated that the sufficiency of the notice is an issue to be resolved by the applicant and the patent owner without involvement of the FDA."); *see also* Comments to Final Rule on 21 C.F.R. 314.52(a), 59 Fed. Reg. 50338, 50342 (Oct. 3, 1994). If allowed to stand, *3M* leaves patentees in a situation where ***neither the FDA nor the courts will enforce compliance*** with the statutory scheme that has been mandated by Congress. This gap renders the statute meaningless and is not sound policy.

Compliance with the statutory notice requirement is necessary to protect patent owners like Abbott from premature litigation. Unless ANDA applicants provide the "detailed statement" required under the statute, patent owners cannot properly assess whether to initiate litigation and inevitably must rush into litigation without knowing the issues involved. And litigation forced by deficient, placeholder Paragraph IV letters deprives patent owners of the full benefit of the Hatch-Waxman Act's thirty-month litigation stay to develop and present their cases. To prevent these harms, this Court should not allow Lupin to assert defenses in this litigation that it could have presented in its Paragraph IV letter, but chose not to raise until months later.

## IV. CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court preclude Lupin from relying on EP '965, the '930 patent, and the other non-disclosed publications as prior art to the NIASPAN® patents that were not timely disclosed during fact discovery. Abbott also respectfully requests that the Court strike Lupin's defenses that were not included in its Paragraph IV letter and dismiss Lupin's related counterclaims.

                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                      */s/ Mary B. Graham*

                      Mary B. Graham (#2256)
                      1201 N. Market Street
                      P.O. Box 1347
                      Wilmington, DE 19899-1347
                      (302) 658-9200
                      mgraham@mnat.com
                         *Attorneys for Abbott Laboratories*
                         *and Abbott Respiratory LLC*

OF COUNSEL:

William F. Lee
Hollie L. Baker
Vinita Ferrera
Christopher R. Noyes
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

September 27, 2010
3790659

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 27, 2010 upon the following individuals in the manner indicated:

**BY E-MAIL**

Karen L. Pascale, Esq.
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**kpascale@ycst.com**

**BY E-MAIL**

Kevin F. Murphy, Esq.
FROMMER LAWRENCE & HAUG LLP
**kmurphy@flhlaw.com**

Michael F. Brockmeyer, Esq.
FROMMER LAWRENCE & HAUG LLP
**mbrockmeyer@flhlaw.com**

Barry S. White, Esq.
FROMMER LAWRENCE & HAUG LLP
**bwhite@flhlaw.com**

Steven M. Amundson, Esq.
FROMMER LAWRENCE & HAUG LLP
**samundson@flhlaw.com**

*/s/ Mary B. Graham*

Mary B. Graham (#2256)