IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT LABORATORIES and ABBOTT RESPIRATORY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 09-152-LPS |
| LUPIN LIMITED and LUPIN PHARMACEUTICALS, INC., | ) ) ) | |
| Defendants. | ) ) | **REDACTED** |

## LUPIN'S ANSWERING BRIEF IN OPPOSITION TO ABBOTT'S MOTION TO EXCLUDE EXPERT EVIDENCE

OF COUNSEL:

**FROMMER LAWRENCE & HAUG LLP**
Barry S. White
Steven M. Amundson
Kevin F. Murphy
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800

YOUNG CONAWAY STARGATT & TAYLOR LLP
Karen L. Pascale (#2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com

*Attorneys for Defendants, Lupin Limited and
Lupin Pharmaceuticals, Inc.*

November 10, 2010

Redacted Version:      November 17, 2010

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

GLOSSARY ......................................................................................................................iv

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .......................................................................................................................3

I.      The Court Should Deny Abbott's Request to Preclude
        Expert Evidence Because Abbott Cannot Satisfy
        the Standard for Disallowing Expert Evidence........................................................3

        A.      Abbott Misplaces Its Reliance on Rule 37(c)(1)................................................3

        B.      Abbott's Request to Preclude Lupin's Experts from Relying
                on EP '965 and the '930 Patent to Establish Obviousness Does
                Not Satisfy the Standard for Disallowing Expert Evidence....................................5

                1.      The Delay in Citing EP '965 and the '930 Patent
                        to Support Obviousness Defenses Resulted from
                        Abbott's Delay in Producing the Notice Letters
                        that Lupin Requested Early During Discovery............................................5

                2.      The *Pennypack* Factors Favor Admissibility.................................................6

        C.      Abbott's Request to Preclude Lupin's Experts from
                Referencing the "Non-Disclosed" Publications Does Not
                Satisfy the Standard for Disallowing Expert Evidence..........................................10

II.     The Court Should Deny Abbott's Request to
        Exclude Defenses Not Discussed in Lupin's Notice
        Letter for Both Procedural and Substantive Reasons .........................................13

        A.      The Federal Circuit's *3M* Decision Controls and Prohibits Judicial
                Review of the Sufficiency of an ANDA Applicant's Notice Letter .....................13

        B.      An ANDA Applicant's Notice Letter Does Not Limit the
                Defenses That It May Raise After a Patentee Files Suit........................................16

        C.      The *Pennypack* Factors Favor Admissibility..........................................................20

## TABLE OF AUTHORITIES

**<u>Statutes</u>**

21 U.S.C. § 355(j)(2)(B)(iv)(II) ..................................................................... 16, 20

35 U.S.C. § 102 ................................................................................................ 18

35 U.S.C. § 103 ................................................................................................ 18

35 U.S.C. § 282 ................................................................................................ 18


**<u>Cases</u>**

*Abbott Labs. v. Sandoz Inc.*,
    No. 09-cv-00215-GMS (D. Del. filed Apr. 1, 2009) ............................ 15

*Abbott Labs., Inc. v. Apotex Inc.*,
    No. 09-7968, 2010 WL 2899113 (N.D. Ill. July 9, 2010) ..................... 15, 17

*Astra Aktiebolag v. Kremers Urban Dev. Co.*,
    Civ. No. 99-8928, 2000 WL 257125 (S.D.N.Y. Mar. 8, 2000) ............. 17

*AstraZeneca AB v. Mutual Pharm. Co.*,
    221 F. Supp. 2d 528 (E.D. Pa. 2002) .................................................... 16

*ATD Corp. v. Lydall, Inc.*,
    159 F.3d 534 (Fed. Cir. 1998) ................................................................ 4

*Biovail Labs., Inc. v. TorPharm, Inc.*,
    No. 01-9008, 2003 WL 21254417 (N.D. Ill. May 23, 2003) ................. 14, 15

*Bridgestone Sports Co. v. Acushnet Co.*,
    No. 05-132-JJF, 2007 WL 521894 (D. Del. Feb. 15, 2007) ................. 4

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83 (1993) ................................................................................ 8

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ................................................................... 9

*Intermec Techs. Corp. v. Palm Inc.*,
    No. 07-272-SLR, 2010 WL 2340228 (D. Del. June 7, 2010) ............... 8

*Lab. Skin Care Inc. v. Ltd. Brands, Inc.*,
    661 F. Supp. 2d 473 (D. Del. 2009) ..................................................... 4

*Medigen of Ky., Inc. v. Public Serv. Comm'n of W. Va.*,
    985 F.2d 164 (4th Cir. 1993) ................................................................ 18

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
    559 F.2d 894 (3d Cir. 1977)................................................................................................. 5

*Minemyer v. B-Roc Reps., Inc.,*
    No. 07-1763, 2009 WL 3757378 (N.D. Ill. Oct. 29, 2009) ............................................... 4

*Minn. Mining & Mfg. Co. v. Barr Labs., Inc.,*
    289 F.3d 775 (Fed. Cir. 2002)................................................................................... 13, 14

*Praxair, Inc. v. ATMI, Inc.,*
    No. 03-1158-SLR, 2005 WL 3159054 (D. Del. Nov. 28, 2005) ....................................... 4

*Prof'l Cleaning & Innovative Building Servs., Inc. v. Kennedy Funding, Inc.,*
    245 Fed. App'x 161 (3d Cir. 2007)................................................................................... 8

*Stored Value Solutions, Inc. v. Card Activation Techs., Inc.,*
    No. 09-495-LPS, 2010 WL 3834457 (D. Del. Sept. 27, 2010) ......................................... 9

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,*
    549 F.3d 1381 (Fed. Cir. 2008).................................................................................. 15, 16

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,*
    No. 03-8523, 2005 WL 1457696 (S.D.N.Y. June 15, 2005) ........................................ 4, 17

*WebXchange Inc. v. FedEx Corp.,*
    No. 08-133-JJF, 2010 WL 299240 (D. Del. Jan. 20, 2010)............................................. 10

## Rules

Fed. R. Civ. P. 15(a)(1)(A) .................................................................................................. 18

Fed. R. Civ. P. 26(a)(2)(B) .................................................................................................... 3

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................................... 4

Fed. R. Civ. P. 37(c)(1)...................................................................................................... 3, 5

## Other Authorities

H.R. Rep. No. 98–857, pt. I (1984), *reprinted in* 1984 U.S.C.C.A.N. 2647 ..................... 9, 18, 19

# GLOSSARY

| | |
|---|---|
| '229 Patent: | Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia, U.S. Patent No. 6,818,229 (filed Oct. 31, 1997) (issued Nov. 16, 2004) (LMA111-40)[1] |
| '428 Patent: | Nicotinic Acid Compositions for Treating Hyperlipidemia and Related Methods Therefor, U.S. Patent No. 6,080,428 (filed Jan. 14, 1995) (issued June 27, 2000) (LMA1-13) |
| '691 Patent: | Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia Having Unique Biopharmaceutical Characteristics, U.S. Patent No. 6,746,691 (filed Oct. 31, 1997) (issued June 8, 2004) (LMA84-110) |
| '715 Patent: | Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia Having Unique Urinary Metabolite Profiles, U.S. Patent No. 6,406,715 (filed Oct. 31, 1997) (issued on June 18, 2002) (LMA31-55) |
| '848 Patent | Hydrophobic Component Free Sustained Release Nicotinic Acid Compositions for Treating Hyperlipidemia and Related Methods Therefor, U.S. Patent No. 7,011,848 (filed Dec. 22, 1999) (issued Mar. 14, 2006) (LMA141-52) |
| '930 Patent: | Methods and Sustained Release Nicotinic Acid Compositions for Treating Hyperlipidemia at Night, U.S. Patent No. 6,129,930 (filed Mar. 6, 1997) (issued Oct. 10, 2000) (LMA14-30) |
| '967 Patent: | Methods for Reducing Flushing in Individuals Being Treated with Nicotinic Acid for Hyperlipidemia, U.S. Patent No. 6,676,967 (filed Oct. 31, 1997) (issued Jan. 13, 2004) (LMA56-83) |
| EP '965 | Nicotinic Acid Compositions for Treating Hyperlipidemia, European Patent Publication 643,965 (filed Sept. 19, 1994) (published Mar. 22, 1995) (LMA4780-97) |
| ATP I: | The Expert Panel, National Cholesterol Education Program, *Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults,* 148 Arch. Intern. Med. 36 (1988) (LMA4801-34) |

---

[1]   "LMA_____" refers to pages in *Lupin's Appendix in Support of Its Answering Brief in Opposition to Abbott's Motion to Exclude Expert Evidence*, filed concurrently with this brief.

ATP II:            The Expert Panel, National Cholesterol Education Program, *Second Report of the Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel II)*, 89 Circulation (No. 3) 1329 (1994) (LMA4835-953)

ATP III:           The Expert Panel, National Cholesterol Education Program, *Third Report of the National Cholesterol Education Program (NCEP) Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel III) Final Report* (LMA4954-5216)

Altschul:          R. Altschul et al., *Influence of Nicotinic Acid on Serum Cholesterol in Man*, 54 Arch. of Biochem. & Biophys. 558 (1955) (LMA4798-800)

Figge:             H. Figge et al., *Comparison of Excretion of Nicotinuric Acid After Ingestion of Two Controlled Release Nicotinic Acid Preparations in Man*, 28 J. Clin. Pharmacol. 1136 (1988) (LMA5217-21)

Fumagalli:         R. Fumagalli, *Pharmacokinetics of Nicotinic Acid and Some of its Derivatives*, in Metabolic Effects of Nicotinic Acid and its Derivatives (Gey & Carlson eds., 1971) (LMA5222-41)

Lieberman:         H. Lieberman, *Pharmaceutical Dosage Forms: Tablets, Vol. 2* (Lieberman et al., eds., 2d. ed. 1990) (LMA5242-465)

Martin:            A. Martin and J. Doluiso eds., *Industrial Bioavailability and Pharmacokinetics: Guidelines, Regulations and Controls* (1977) (LMA5466-626)

Miller:            O.N. Miller et al., *Investigation of the Mechanism of Action of Nicotinic Acid on Serum Lipid Levels in Man*, 8 Am. J. Clin. Nutrition 480 (1960) (LMA5627-37)

Mrochek:           J. Mrochek, *Metabolic Response of Humans to Ingestion of Nicotinic Acid and Nicotinamide*, 22 Clinical Chemistry 1821 (1976) (LMA5638-44)

Neuvonen:          P.J. Neuvonen et al., *The Bioavailability of Sustained Release Nicotinic Acid Formulations*, 32 British J. Clin. Pharmac. 473 (1991) (LMA5645-48)

Rifkind:           *Drug Treatment of Hyperlipidemia* (Rifkind ed. 1991) (LMA5649-760)

## INTRODUCTION

Rule 37(c)(1) addresses a failure to disclose or supplement under Rule 26 and does not apply. Lupin's expert reports constitute disclosures according to Rule 26(a)(2)(B). Rule 26(e)(1)(A) requires supplementation only if the "information has not otherwise been made known ...." By serving expert reports, Lupin made the information at issue known to Abbott during the discovery process, i.e., at the beginning of expert discovery (September 1, 2010).

Even if Rule 37(c)(1) does apply, the disclosure in opening expert reports was substantially justified, and Abbott will suffer no prejudice due to the evidence in those reports. The *Pennypack* factors favor admission of the expert evidence that Abbott seeks to exclude. Abbott delayed producing notice letters from other ANDA applicants until after the fact discovery deadline. One of those notice letters discussed invalidity theories based on EP '965, while another detailed an obviousness-type double patenting defense for the '428 patent based on the '930 patent. If Abbott had produced the other notice letters earlier, Lupin would have cited EP '965 and the '930 patent in its supplemental interrogatory responses to support its obviousness defenses.

Abbott will suffer no prejudice due to Lupin's experts' reliance on EP '965, the '930 patent, and the so-called non-disclosed publications. Abbott has identified no fact discovery needed to address this prior art. Under the new schedule for expert discovery, Abbott's experts will have ample time—more than three months—to formulate responses to Lupin's experts. And Abbott can question Lupin's experts about this prior art at their depositions.

As for the sufficiency of Lupin's notice letter under § 355(j)(2)(B), controlling Federal Circuit precedent, *3M v. Barr*, prohibits judicial review. In *3M*, the Federal Circuit held that a private party in a patent-infringement action cannot enforce § 355(j)(2)(B).

Even if Abbott could seek judicial review of the sufficiency of Lupin's notice letter, the

# REDACTED

Court should deny Abbott's request to exclude defenses not discussed in Lupin's notice letter. Nothing in the statutory language, legislative history, or case law supports Abbott's reading of § 355(j)(2)(B). Consequently, other courts have rejected similar attempts to limit the defenses an ANDA applicant may advance in litigation to the defenses contained in its notice letter.

## BACKGROUND

On the first day permitted by the federal rules, May 8, 2009, Lupin served interrogatories and production requests. (LMA1761-89.) Among other things, Lupin requested "[e]ach document or thing concerning a notice under 21 U.S.C. § 355(j)(2)(B) or 21 C.F.R. § 314.95 that mentions any of the patents in suit." (LMA1780.) This request covers notice letters that other ANDA applicants sent to Abbott. On June 23, 2009, Abbott responded to this request by making various objections and then saying, "Abbott will produce non-privileged documents found in its possession, custody or control ...." (LMA1804-05.)

Other ANDA applicants sent notice letters regarding the patents in suit to Abbott between August 2008 and May 2010. (LMA4308-779.) Although Abbott supplied over 3,600,000 pages of documents between June 29, 2009 and June 11, 2010, Abbott provided only two ▮ notice letters. (LMA2190-235.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contain no invalidity assertions. (LMA4308-21.)

In a June 14, 2010 letter, Lupin asked Abbott to produce notice letters from other ANDA applicants, expressly pointing out Lupin's May 2009 production request, and asked Abbott to respond by June 17, 2010. (LMA4305-06.) Since Abbott did not respond by that date, Lupin sent a follow-up e-mail on June 18, 2010. (LMA4307.) Abbott produced the other notice letters on June 22, 2010. (LMA2239, LMA4329-779.) Attached Exhibit A shows a timeline of these events.

One ▮ notice letter discussed invalidity theories based on EP '965. (LMA4432-33, LMA4449-50.) Another ▮ notice letter detailed an obviousness-type

2

# REDACTED

double patenting defense for the '428 patent based on the '930 patent.  (LMA4375-78.)

As Abbott notes, on April 22, 2010, Lupin served supplemental interrogatory responses regarding the invalidity of claims that Abbott identified as infringed in November 2009, and on May 12, 2010, Lupin served supplemental interrogatory responses regarding the invalidity of claims that Abbott identified as infringed in April 2010.  (D.I. 112 at 4 n.3, 5 n.4.)  Because Abbott delayed in providing the ███████ notice letters, Lupin could not review them before the fact discovery deadline, i.e., June 18, 2010 for completing fact depositions.  (D.I. 26 at 2 ¶ 4(d).)  If Abbott had produced the other notice letters earlier, Lupin would have cited EP '965 and the '930 patent in its supplemental interrogatory responses to support its obviousness defenses.

Although the parties agreed to exchange supplemental responses to contention interrogatories on April 22, 2010, Abbott only supplemented its response to Lupin's interrogatory no. 4 on that date.  (LMA2079-167.)  Abbott did not supplement its responses to other contention interrogatories until May 24, 2010.  (LMA2168-82.)  And because its supplemental response to interrogatory no. 8 was apparently deficient, Abbott provided additional information on July 23, 2010.  (LMA2183-89.)  Abbott's supplemental interrogatory responses reference some of the so-called non-disclosed publications.  (LMA2180, i.e., ABB-S00823378-411 (ATP I), LMA2186, i.e., ABB00106119-23 (Figge) & ABB00122786-23048 (ATP III).)

## ARGUMENT

**I.  The Court Should Deny Abbott's Request to Preclude Expert Evidence Because Abbott Cannot Satisfy the Standard for Disallowing Expert Evidence**

### A.  Abbott Misplaces Its Reliance on Rule 37(c)(1)

In urging the Court to exclude expert evidence, Abbott relies on Rule 37(c)(1).  (D.I. 112 at 6-7.)  Rule 37(c)(1) precludes a party from relying on information not disclosed as required by Rule 26(a) and Rule 26(e).  Fed. R. Civ. P. 37(c)(1).  But Lupin's opening expert reports constitute disclosures according to Rule 26(a)(2)(B).  *See* Fed. R. Civ. P. 26(a)(2)(B).

Rule 26(e)(1)(A) requires supplementation only if the "information has not otherwise been made known ... during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). By serving opening expert reports, Lupin made the information at issue known to Abbott during the discovery process and in writing. (LMA2667-3600.)

Abbott did not view the fact discovery deadline as ending a party's ability to update its contentions. Abbott's April 22, 2010 supplemental interrogatory responses only addressed infringement of the claims previously identified by Abbott as infringed. (LMA2252-54, LMA2079-167.) Yet, Abbott's September 1, 2010 opening expert reports included opinions regarding infringement of two additional claims, i.e., '967 patent claims 13-14. (LMA2252-54, LMA3762-63 ¶¶ 559-62, LMA4017-18 ¶¶ 278-81.) Abbott cannot have it both ways, i.e., advancing updated infringement contentions in expert reports yet seeking to exclude updated invalidity contentions in expert reports.

The cases that Abbott relies on do not appear to involve prior art disclosed in opening expert reports. (D.I. 112 at 6-8.) *Laboratory Skin Care*, *ATD*, and *Minemyer* concerned prior art first disclosed after all discovery ended. *Lab. Skin Care Inc. v. Ltd. Brands, Inc.*, 661 F. Supp. 2d 473, 478-89 (D. Del. 2009); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 550-51 (Fed. Cir. 1998); *Minemyer v. B-Roc Reps., Inc.*, No. 07-1763, 2009 WL 3757378, at *8-9 (N.D. Ill. Oct. 29, 2009). *Bridgestone* concerned prior art first disclosed after the patentee relied on the patent challenger's contentions when selecting which patent claims to assert. *Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132-JJF, 2007 WL 521894, at *3-5 (D. Del. Feb. 15, 2007). *Takeda* and *Praxair* do not indicate when the patent challenger initially disclosed the prior art at issue. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, No. 03-8523, 2005 WL 1457696, at *1-2 (S.D.N.Y. June 15, 2005); *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2005 WL 3159054, at *4 (D. Del. Nov. 28, 2005).

**REDACTED**

**B.**   **Abbott's Request to Preclude Lupin's Experts from Relying on
EP '965 and the '930 Patent to Establish Obviousness Does
Not Satisfy the Standard for Disallowing Expert Evidence**

Even if Rule 37(c)(1) does apply, it does not call for exclusion of evidence where the late

disclosure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  When applying

this standard and deciding whether to exclude expert evidence, a court in the Third Circuit

should consider the following factors: the explanation for the delayed disclosure; the prejudice

suffered by the opponent; the ability of the opponent to cure any prejudice; the likelihood of trial

disruption; the importance of the evidence to the proponent; and bad faith or willfulness by the

proponent. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d

Cir. 1977).  As explained in detail below, the *Pennypack* factors—which Abbott ignores—favor

admission of the expert evidence that Abbott seeks to exclude.

**1.**   **The Delay in Citing EP '965 and the '930 Patent to Support
Obviousness Defenses Resulted from Abbott's Delay in Producing
the Notice Letters that Lupin Requested Early During Discovery**

To develop invalidity defenses, Lupin and its experts had to review voluminous prior art.

The patents in suit cite over 500 patents and publications as references.  (LMA1-152.)  Lupin and

its experts needed to evaluate those references as well as other prior art, such as other patents and

publications produced by Abbott.  As of the June 18, 2010 fact discovery deadline, Abbott had

produced over 378,000 documents, comprising more than 3,600,000 pages.  (LMA2190-238.)

Although EP '965 is prior art for the '715, '967, '691, and '229 patents, Abbott did not

submit EP '965 to the Patent Office during the prosecution of these patents.  (LMA177-1760.)

Lupin did not appreciate EP '965's relevance to the obviousness of the '715, '967, '691,

and '229 patents until (a) Abbott produced the ▮▮▮▮▮ notice letters on June 22, 2010 and

(b) Lupin reviewed ▮▮▮▮▮ March 25, 2010 notice letter.  That notice letter asserted that EP '965

anticipates or renders obvious various claims in the '229 and '967 patents.  (LMA4432-33,

5

# REDACTED

LMA4449-50.) If Abbott had produced the ▮▮▮▮ notice letters earlier, Lupin would have cited EP '965 in its supplemental interrogatory responses to support its obviousness defenses.

Similarly, Lupin did not appreciate that the '930 patent could be used as the basis for an obviousness-type double patenting defense for the '428 patent until (a) Abbott produced the ▮▮▮▮ notice letters on June 22, 2010 and (b) Lupin reviewed ▮▮▮▮ January 4, 2010 notice letter. That notice letter detailed an obviousness-type double patenting defense based on the '930 patent. (LMA4375-78.) If Abbott had produced the ▮▮▮▮ notice letters earlier, Lupin would have included in its supplemental interrogatory responses that defense.

Given the volume of material and number of references involved, simply knowing that a reference exists does not equate to having an understanding of that reference's relevance to the invalidity of any patent in suit. That the different patents in suit include claims with different limitations complicates the analysis and compounds the difficulty in assessing relevance.

## 2. The *Pennypack* Factors Favor Admissibility

Abbott will suffer no prejudice due to Lupin's experts' reliance on EP '965 and the '930 patent. Abbott has identified no fact discovery that it supposedly needs before it can address those references. (D.I. 112 at 8-9.) In any event, EP '965 names David Bova as the inventor. (LMA4780.) The '930 patent also names him as the inventor. (LMA14.) ▮▮▮▮ ▮▮▮▮ (LMA2560, i.e., 12:3-6.) Abbott can fully explore with the inventor facts concerning EP '965 and the '930 patent.

As for expert discovery, Abbott's experts will have ample time to consider and address EP '965 and the '930 patent. The parties served opening expert reports on September 1, 2010. (D.I. 112 at 6.) After that, Abbott filed its motion, an Abbott expert died, expert discovery was extended, and the trial was delayed. (D.I. 114, D.I. 116, D.I. 118, D.I. 122.) Under the new schedule, the parties will serve rebuttal expert reports on December 17, 2010. (D.I. 122 at 1.)

The expert reports that Lupin served on September 1st do not contain Lupin's confidential information.  Since those reports only contain Abbott's confidential information, Abbott's replacement expert(s) could review them immediately after service.  By the due date for rebuttal reports, Abbott's experts will have had ample time to evaluate and address EP '965 and the '930 patent.  Moreover, Abbott will have the opportunity during depositions to question Lupin's experts about EP '965 and the '930 patent.

Abbott argues that it will suffer prejudice because its experts will have "only one month" to analyze EP '965 and the '930 patent and formulate responses.  (D.I. 112 at 8.)  But that argument rests on a due date for rebuttal expert reports (October 1, 2010) that no longer applies. (*Id.*)  Under the new schedule for expert discovery, Abbott's experts will have more than three months to formulate responses to Lupin's experts.  Moreover, Abbott's experts have expressed opinions about infringement of the '930 patent and have already analyzed it.  As Abbott admits, EP '965 "is the European counterpart to the parent application to the NIASPAN® patents ...." (D.I. 112 at 6.)  Because those patents (LMA1-152) include much of the parent application's disclosure (LMA153-76) and because Abbott's experts have already analyzed those patents to express opinions about infringement, Abbott's experts will require little time to analyze EP '965. If Abbott's experts have evaluated the invalidity theories asserted in the other notice letters, they have already considered invalidity issues involving EP '965 and the '930 patent.

Abbott argues prejudice based on a trial date that no longer applies, asserting that "with trial of this case scheduled to begin on January 24, 2011, an extension of expert discovery to permit Abbott additional time to investigate and analyze these new arguments is not feasible." (D.I. 112 at 8-9.)  The extension of expert discovery necessitated by the death of an Abbott expert has delayed the trial until May 31, 2011.  The extension of expert discovery provides the "additional time to investigate and analyze these new arguments" allegedly needed.

7

Lupin's experts' reliance on EP '965 and the '930 patent to establish obviousness will not disrupt a January 2011 trial because the trial will not start until late May 2011.

While Lupin has invalidity theories other than double patenting for the '428 patent and relies on prior art other than EP '965 to establish the obviousness of the '715, '967, '691, and '229 patents, EP '965 and the '930 patent are important to Lupin's invalidity defenses. For instance, EP '965 is a better reference for these patents than any other publication that Lupin relies on because EP '965 expressly discloses 375-mg, 500-mg, and 750-mg Niaspan formulations. (LMA4783.) And the double-patenting defense uniquely relies on the claims in one asserted patent to invalidate the claims in another asserted patent. Thus, excluding expert evidence concerning invalidity based on EP '965 and the '930 patent would prejudice Lupin.

Abbott concedes the importance of the evidence that it seeks to exclude by noting that the "issues presented in this motion are dispositive ...." (D.I. 111-1.) In addition, "the validity of a patent is a matter of public interest, involving the public's right to an invention." *Intermec Techs. Corp. v. Palm Inc.*, No. 07-272-SLR, 2010 WL 2340228, at *2 (D. Del. June 7, 2010). "[E]vidence of anticipation or obviousness in the form of prior art is critical to such a defense." *Id.* The Supreme Court has "emphasized the importance to the public at large of resolving questions of patent validity ...." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993). Further, the Third Circuit has observed that "one of the basic objectives of the federal rules [is] the determination of cases on their merits." *Prof'l Cleaning & Innovative Building Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. App'x 161, 165 (3d Cir. 2007). Excluding meritorious invalidity defenses would conflict with this important objective.

Also, excluding meritorious invalidity defenses would conflict with Hatch-Waxman's goal of expediting generic market entry. By authorizing ANDAs, Congress sought to stimulate generic drug approvals and hasten the introduction of lower-priced generic products. *See*

# REDACTED

H.R. Rep. No. 98–857, pt. I, at 14 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2647, 2647.

The Third Circuit has called the exclusion of crucial expert evidence an "extreme"

sanction and has explained that a trial court should not normally impose that "extreme" sanction

absent a showing of willful deception or the flagrant disregard of a court order. *In re Paoli R.R.*

*Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994). Abbott has not alleged either. (D.I. 112

at 6-9.) And any such allegation would lack merit. As explained above, if Abbott had produced

the ███ notice letters during fact discovery, Lupin would have cited EP '965 and the

'930 patent in its supplemental interrogatory responses.

This Court has recently recognized that an expert report regarding invalidity constitutes

"critical evidence" in a patent case and that the exclusion of such a report is an "'extreme sanction,

not normally to be imposed absent a showing of willful deception or flagrant disregard of a court

order by the proponent of the evidence.'" *Stored Value Solutions, Inc. v. Card Activation Techs.,*

*Inc.*, No. 09-495-LPS, 2010 WL 3834457, at *2 (D. Del. Sept. 27, 2010) (quoting *Paoli*, 35 F.3d

at 791-92). In *Stored Value*, this Court rejected CAT's request to strike SVS's rebuttal expert

report regarding invalidity even though SVS deceived CAT into believing that SVS had finished

serving expert reports regarding invalidity, thus prejudicing CAT. *Id.* at*5-6.

Here, in contrast to *Stored Value*, Lupin did not deceive Abbott into believing that Lupin

had finished serving expert reports regarding invalidity. Lupin's experts discussed obviousness

in view of EP '965 and the '930 patent in their opening expert reports. (*See, e.g.*, LMA2704-07,

LMA2967-70, LMA3027-33, LMA3282-84, LMA3555-61.) Similar to *Stored Value*, however,

this case rises and falls on expert witnesses.

In summary, an analysis of the *Pennypack* factors shows that the Lupin's experts'

reliance on EP '965 and the '930 patent in their opening expert reports was (a) substantially

justified and (b) harmless since Abbott's experts have sufficient time to consider those references

9

and address them in their rebuttal expert reports. "[T]he general Third Circuit precedent highly disfavor[s] the exclusion of evidence ...." *WebXchange Inc. v. FedEx Corp.*, No. 08-133-JJF, 2010 WL 299240, at *3 (D. Del. Jan. 20, 2010). In view of this principle and an analysis of the *Pennypack* factors, the Court should deny Abbott's request to preclude Lupin's experts from relying on EP '965 and the '930 patent to establish obviousness.

**C.  Abbott's Request to Preclude Lupin's Experts from Referencing the "Non-Disclosed" Publications Does Not Satisfy the Standard for Disallowing Expert Evidence**

Abbott will suffer no prejudice due to Lupin's experts' reliance on the so-called non-disclosed publications, i.e., ATP I, ATP II, ATP III, Altschul, Figge, Fumagalli, Lieberman, Martin, Miller, Mrochek, Neuvonen, and Rifkind. (LMA4780-5760 (the glossary on pages iv-v includes a full citation for each of these publications).)

For example, Lupin's experts noted that ATP I (1988), ATP II (1993), and ATP III (2004) provided guidelines for the treatment of high blood cholesterol, discussed the effectiveness of niacin therapy, and described the findings of clinical trials. (LMA2930-31 ¶¶ 22-28, LMA3245-47 ¶¶ 25-31.) Lupin's experts incorporated these materials by reference into their reports so they could discuss basic background facts if necessary at trial. (LMA2931 ¶¶ 25-27, LMA3246-47 ¶¶ 28-30.) The discussion of basic background facts should not prejudice Abbott.

In June 2010, this Court construed "significant increase in HDL cholesterol" in '848 patent claim 1 to mean "[a]n increase that results in a meaningful decrease in an individual's risk of developing cardiovascular disease." (D.I. 95 at 53-54, 68.) Lupin's Dr. Fleming used the discussion of cardiovascular risk factors in ATP II to evaluate what would constitute "a meaningful decrease in an individual's risk of developing cardiovascular disease." (LMA2987-88 ¶ 174, LMA2998 ¶ 200, LMA3007 ¶ 223.) Abbott's Dr. Foster used ATP III for the same

10

**REDACTED**

purpose. (LMA3721-22 ¶¶ 388-89 & nn.175-76.) But Abbott did not disclose ATP III in its supplemental contention interrogatory responses regarding infringement of '848 patent claim 1. (LMA2115-16 .) If this Court precludes Lupin's expert from using ATP II to apply its claim construction, this Court should preclude Abbott's expert from using ATP III to apply its claim construction.

Lupin's experts Drs. Fleming and Wharton noted that Altschul suggests dosing with niacin once per day as a single dose. (LMA2975-76 ¶ 151, LMA2979 ¶ 157, LMA2991-92 ¶ 182, LMA2993 ¶ 186, LMA3290 ¶ 152, LMA3293 ¶ 158, LMA3310 ¶ 181, LMA3312 ¶ 185.) They also noted that Abbott's predecessor Kos ████████████████████████████████████

████████████████████████████████████████████████████████████

████████ (*Id.*, LMA4275-304, i.e., LMA4278, LMA4302 no. 4.)

Lupin's expert Dr. Taft cited ATP I, Figge, Fumagalli, Lieberman, Martin, Miller, Mrochek, Neuvonen, and Rifkind because they discuss technological facts known to him that an ordinarily skilled artisan would also know. (LMA3172-74, LMA3188, LMA3201, LMA3203-07, LMA3210, LMA3213-16.) For instance, in view of Miller "[i]t was understood since the early 1960s that [nicotinuric acid] NUA appears to have an antilipidemic effect apart from that of nicotinic acid." (LMA3213 ¶ 126 & n.173.) According to ATP I and many publications not cited by Dr. Taft, a therapeutic dose of niacin can be 1.5 g/day to 2 g/day. (LMA3207 ¶ 112 & n.151.) As discussed in Rifkind and many books and journal articles not cited by Dr. Taft, niacin is metabolized into several metabolites through metabolic pathways called Pathway I and Pathway II. (LMA3172-73 ¶ 13 & n.2, LMA3204 ¶ 105 & n.136.) As Dr. Taft pointed out, "The metabolism of nicotinic acid is also explained in Fumagalli ... and Mrochek ...." (LMA3204 n.136.)

Dr. Taft cited Neuvonen for the fact that researchers had measured the amounts of nicotinic

acid and nicotinuric acid in samples obtained from human subjects. (LMA3202-03 ¶ 103 & n.130, LMA3205 ¶ 107 & n.141, LMA3205-06 ¶ 108 & n.145.) He also discussed the results reported in Neuvonen. (LMA3214-15 ¶ 128.) Dr. Taft previously cited Neuvonen for a similar point, i.e., in a March 29, 2010 declaration addressing claim-construction issues. (LMA3604-05 ¶ 8.) Dr. Taft cited Figge for a related point and as noting that nicotinuric acid is a major metabolite of nicotinic acid. (LMA3173-74 ¶ 16 & nn.9-11, LMA3202-03 ¶ 103 & n.128, LMA3205 ¶ 107 & n.140, LMA3205-06 ¶ 108 & nn.143-44.) Abbott knows about Figge since Abbott cited Figge in supplemental interrogatory responses dated July 23, 2010. (LMA2186, i.e., ABB00106119-23.) In those interrogatory responses, Abbott also cited ATP III. (LMA2186, i.e., ABB00122786-3048.) Earlier, in supplemental interrogatory responses dated May 24, 2010, Abbott referenced ATP I. (LMA2180, i.e., ABB-S00823378-411.)

Moreover, expert reports in the Kos v. Barr case cited ATP I as invalidating prior art. (See e.g., LMA2295, LMA2316, LMA2370, LMA2383-84.) Lupin's initial interrogatory responses incorporated those expert reports by reference. (LMA1837-48.)

Abbott's predecessor Kos cited ATP I to the Patent Office when prosecuting three of the patents in suit (LMA58, LMA86, LMA114) and cited Altschul, Figge, Miller, and Neuvonen when prosecuting five of the patents (LMA4-5, LMA16-17, LMA58-60, LMA87-89, LMA114-16).

Reference to technological facts according to the "non-disclosed" publications will not prejudice Abbott, particularly since it (or its predecessor Kos) learned about or relied on several of them in interrogatory responses, during patent prosecution, or in the Barr case. Abbott has identified no fact discovery that it supposedly needs to address these publications. Abbott took no fact discovery regarding the publications that Lupin cited in its supplemental interrogatory responses. Abbott's experts will have more than three months to consider the statements by Lupin's experts that reference the "non-disclosed" publications and to develop their responses.

The voluminous prior art made the task of selecting particular references for particular purposes difficult. The "non-disclosed" publications are important due to the public's interest in resolving questions of patent validity and having access to lower-priced generic products. Abbott has not alleged bad faith or willfulness. In short, the *Pennypack* factors favor admissibility of the statements by Lupin's experts that reference the "non-disclosed" publications.

**II.     The Court Should Deny Abbott's Request to Exclude Defenses Not Discussed in Lupin's Notice Letter for Both Procedural and Substantive Reasons**

**A.     The Federal Circuit's *3M* Decision Controls and Prohibits Judicial Review of the Sufficiency of an ANDA Applicant's Notice Letter**

In *3M*, the Federal Circuit held that it could not decide a "question of compliance with the paragraph IV certification [notice] requirements. Under the Hatch-Waxman Amendments we cannot enforce the [notice] requirements of paragraph IV certifications in an infringement suit." *Minn. Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 782 (Fed. Cir. 2002).

In *3M*, 3M sued Barr for patent infringement after Barr filed an ANDA. *Id.* at 778-79. The Federal Circuit considered the propriety of the district court's dismissal with prejudice. *Id.* at 777, 779-80. 3M argued that the dismissal should have been without prejudice because Barr's notice letter failed to satisfy the notice requirements in § 355(j)(2)(B). *Id.* at 777, 781. Although the Federal Circuit recognized that 3M's claim was "not insubstantial" and that Barr's notice letter "was of no assistance to 3M," it held that "§ 355(j)(2)(B) cannot be enforced by a private party in a patent infringement action, but must be enforced, if at all, only in the context of an action under the Administrative Procedure Act." *Id.* at 777, 781, 782.

The Federal Circuit reasoned that 3M sought "to assert a private right of action under the FFDCA because of another party's alleged failure to comply with the statute" and that the Hatch-Waxman Act created no such private right of action. *Id.* at 783. It then said, "[W]e hold that appellants [3M] cannot seek a judicial determination of whether a private party's paragraph IV

13

certification complies with 21 U.S.C. § 355(j)(2)(B)." *Id.*

Abbott seeks the same sort of judicial determination that 3M sought. Just as the Federal Circuit held that 3M could not seek a judicial determination whether Barr's notice letter complied with § 355(j)(2)(B), this Court should hold that Abbott cannot seek a judicial determination whether Lupin's notice letter complies with § 355(j)(2)(B).

Abbott asserts that *3M*'s holding should not apply where the patentee raises the compliance issue "within the context of a patent infringement suit." (D.I. 112 at 10.) But the compliance issue in *3M* arose "within the context of a patent infringement suit" since 3M sued Barr for patent infringement. 289 F.3d at 778-79.

Abbott asserts that *3M*'s holding does not extend to cases involving a "live patent dispute" because the cause of action in such cases can be "tied to a[] recognized patent infringement defense." (D.I. 112 at 10-11.) But the decision in *3M* did not turn on whether 3M's request for judicial review was "tied to a[] recognized patent infringement defense." 289 F.3d at 782-84. Rather, the Federal Circuit ruled that the Hatch-Waxman Act did not create any private right of action permitting a patentee to seek judicial review of the sufficiency of an ANDA applicant's notice letter. *Id.* at 783.

Other courts have at least implicitly rejected the notion that *3M*'s holding does not extend to cases involving a "live patent dispute." For example, in *Biovail Laboratories, Inc. v. TorPharm, Inc.*, No. 01-9008, 2003 WL 21254417 (N.D. Ill. May 23, 2003), Biovail sued TorPharm for patent infringement after TorPharm filed an ANDA. *Id.* at *1-2. Biovail's complaint alleged that it was "entitled to an Order that TorPharm's ... [notice] letter does not comply with ... 21 U.S.C. § 355(j)(2)(B)(ii) ...." *Id.* at *2. Regarding that allegation, the district court said, "It is clear from the face of the complaint that Biovail is seeking, as part of its larger patent infringement suit, private relief for TorPharm's alleged failure to comply with Section

14

355(j)(2)(B)'s notification requirements." *Id.* The court also said, "The Federal Circuit's **unambiguous holding** in [*3M v.*] *Barr Labs* makes it clear that Biovail's allegations ... are not cognizable by this Court." *Id.* (emphasis added). The court reasoned that "the Federal Circuit's ruling in [*3M v.*] *Barr Labs* has the effect of stripping this Court of the authority to consider" the sufficiency of TorPharm's notice letter under § 355(j)(2)(B). *Id.*

In *Abbott Laboratories, Inc. v. Apotex Inc.*, No. 09-7968, 2010 WL 2899113 (N.D. Ill. July 9, 2010), Abbott sued Apotex for patent infringement after Apotex filed an ANDA. *Id.* at *1. After Apotex answered Abbott's complaint, Abbott moved to strike defenses that relied on arguments not discussed in Apotex's notice letter. *Id.* at *1, 3. The district court denied Abbott's motion, saying, "The Federal Circuit has **squarely held** that parties may not 'seek a judicial determination of whether a private party's paragraph IV certification complies with 21 U.S.C. § 355(j)(2)(B).'" *Id.* at *3 (quoting *3M*) (emphasis added). The court recognized that *3M* "**binds** this court." *Id.* (emphasis added).

More recently, in *Abbott Laboratories v. Sandoz Inc.*, No. 09-cv-00215-GMS (D. Del. filed Apr. 1, 2009), Judge Sleet rebuffed Abbott's attempt to preclude Sandoz from relying on defenses not discussed in Sandoz's notice letter. (D.I. 51 in 09-cv-00215.) Judge Sleet reasoned that Abbott's motion rested on the premise "that the Federal Circuit's holding in *Minnesota Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775 (Fed. Cir. 2002) 'should be reconsidered.' At present, however, the Federal Circuit's decision in *Minnesota Mining* is **controlling authority**. Given this fact, this court is, of course, obliged to follow it." (*Id.* at 1 n.1 (record citation omitted) (emphasis added).) In *Abbott v. Sandoz*, Abbott made many of the same arguments that it makes here, asserting there as here that *3M*'s holding should not extend to cases involving "live patent infringement issues." (D.I. 27 in 09-cv-00215 at 9-10.)

Abbott cites *Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, 549 F.3d

1381 (Fed. Cir. 2008), to support its position. (D.I. 112 at 11.) But in *Takeda*, the Federal
Circuit observed that the district court did not "limit the [ANDA] filers to the theories raised in
their [paragraph IV] certification [notice] letters." *Id.* at 1390. *Takeda* does not help Abbott.

Abbott also cites *AstraZeneca AB v. Mutual Pharmaceutical Co.*, 221 F. Supp. 2d 528
(E.D. Pa. 2002), to support its position. (D.I. 112 at 11.) But the district court's decision in
*AstraZeneca* (March 12, 2002) predates the Federal Circuit's decision in *3M* (May 1, 2002).

Abbott contends that *3M*'s holding leaves patent owners without recourse to enforce the
Hatch-Waxman Act's notice requirements and that this enforcement gap "renders the statute
meaningless and is not sound policy." (D.I. 112 at 2, 13-14.) As Sandoz pointed out in *Abbott v.
Sandoz*, if an enforcement gap exists, Congress must fill it. (D.I. 31 in 09-cv-00215 at 1, 6-8.)
There, Judge Sleet declined Abbott's request to reconsider the propriety of the Federal Circuit's
decision in *3M*. (D.I. 51 in 09-cv-00215 at 1 n.1.) Here, Abbott asks this Court to "reconsider[]
*3M*'s broad holding." (D.I. 112 at 2.) This Court should decline to do so, just as Judge Sleet did.

**B.    An ANDA Applicant's Notice Letter Does Not Limit the
        Defenses That It May Raise After a Patentee Files Suit**

Abbott incorrectly contends that the Hatch-Waxman Act obligated Lupin to include in its
notice letter all defenses that it might raise during litigation. (D.I. 112 at 9.) The Act provides
that the notice to the patentee "include a detailed statement of the factual and legal basis of the
opinion of the applicant that the patent is invalid or will not be infringed." 21 U.S.C.
§ 355(j)(2)(B)(iv)(II). The Act uses "or" rather than "and" when addressing defenses. *Id.*

But Abbott would have this Court construe "or" to mean "and." On top of that, Abbott
would have this Court read into the "and" requirement an exception for defenses that "could not
have [been] known ... without discovery." (D.I. 112 at 11.) Abbott makes no argument that any
statutory language or legislative history supports its strained statutory construction.

Due to the many possible invalidity defenses, an analysis of patent validity usually

involves a more sweeping inquiry—and thus requires more time and money—than an analysis of infringement. Also, noninfringement defenses may rest on an analysis of only independent patent claims, while invalidity defenses may need to address all patent claims. A patentee may agree with the noninfringement position articulated a notice letter and not file suit. By using "or" rather than "and," the Act permits ANDA applicants to save time and money by avoiding the development of possibly unnecessary invalidity defenses.

Here, the patents in suit have 265 claims. Developing invalidity defenses for each claim before Abbott filed suit and before Lupin knew that Abbott disagreed with Lupin's noninfringement position would have required excessive effort and expense. And much of that work would have been wasted since Abbott alleges infringement of "only" 52 claims. (LMA3676-771, LMA3964-4037.)

Abbott cites—but does not quote—21 U.S.C. § 355(j)(2)(B)(iv)(II) when asserting that Lupin had an obligation to address "its invalidity and non-infringement positions in its Paragraph IV letter." (D.I. 112 at 9.) As one district court has explained, however, "There is no language in the relevant statutory provisions, legislative history or cases" barring an ANDA applicant from asserting defenses not discussed in its notice letter. *Astra Aktiebolag v. Kremers Urban Dev. Co.*, Civ. No. 99-8928, 2000 WL 257125, at *1 (S.D.N.Y. Mar. 8, 2000). Another district court has observed that "there is significant precedent" for the view "that parties are not limited to the theories raised in their paragraph IV [notice] letters." *Abbott v. Apotex*, 2010 WL 2899113, at *3. And a case Abbott cites states that "as a general matter an ANDA applicant may be able to assert theories other than those outlined in a notification letter ...." *Takeda*, 2005 WL 1457696, at *1.

The Hatch-Waxman Act's legislative history indicates that an ANDA applicant may assert any defense under § 282 after a patentee files suit. According to Congress, "The provisions of this bill relating to litigation of disputes involving patent validity and infringement

are not intended to modify existing patent law with respect to the burden of proof and the nature of the proof to be considered by the courts in determining whether a patent is valid or infringed." H.R. Rep. No. 98-857, pt. I, at 28 (1984), *reprinted in* 1984 U.S.C.C.A.N. at 2661. The "existing patent law" included § 282. 35 U.S.C. § 282. That section authorized—and still authorizes—a patent challenger to assert as defenses both noninfringement and invalidity, e.g., due to the failure to satisfy the conditions for patentability in § 102 (anticipation) and § 103 (obviousness). *Id.* That section permits these defenses "in **any action** involving the validity or infringement of a patent," including a lawsuit against an ANDA applicant. *Id.* (emphasis added).

Abbott's proposed defense-preclusion rule would, if adopted, preempt Rule 15(a)(1)(A). That rule permits a defendant to amend an answer "once as a matter of course within 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). Thus, in a non-Hatch-Waxman case, a patent defendant could "as a matter of course" amend an answer lacking invalidity defenses to include them. But according to Abbott, an ANDA applicant could not do so—despite express authorization by the federal rules—unless it had disclosed those defenses in its notice letter. The federal rules strongly favor granting leave to amend. *Medigen of Ky., Inc. v. Public Serv. Comm'n of W. Va.*, 985 F.2d 164, 167-68 (4th Cir. 1993). To overcome this preference, Abbott should supply convincing support for its proposed defense-preclusion rule. But Abbott fails in that endeavor.

Abbott's proposed defense-preclusion rule ignores the realities of patent litigation. An alleged infringer's defenses may change depending on how a district court construes various claim limitations. Broader constructions make claims more susceptible to invalidity attacks, e.g., due to anticipation and obviousness. Narrower constructions make noninfringement determinations more likely. An ANDA applicant cannot predict with certainty how a district court will construe disputed claim language.

Abbott argues that the absence of invalidity defenses in Lupin's notice letter forced it into

18

# REDACTED

"premature litigation" and suggests that it could not "properly assess whether to initiate litigation

...." (D.I. 112 at 14.) An ANDA applicant's notice letter serves to provide a patentee with

information so that it may determine whether it agrees or disagrees with the ANDA applicant's

paragraph IV certification and decide whether to file suit. *See* H.R. Rep. No. 98-857, pt. I, at 27

n.13, *reprinted in* 1984 U.S.C.C.A.N. at 2660 n.13. Based on the notice letter, the patentee may

decide that a lawsuit is not warranted. *Id.* Here, after reviewing Lupin's notice letter, Abbott

decided that a lawsuit was warranted. Lupin's assertion of invalidity defenses after Abbott filed

suit has not caused Abbott to amend its complaint, drop any of the asserted patents, or alter any

request for relief. Abbott was not forced into "premature litigation."

And Abbott would have sued Lupin even if Lupin had included invalidity defenses in its

notice letter. Except ████████████████████████ (LMA4308-28), Abbott

has sued every ANDA applicant who sent a notice letter addressing any of the patents in suit.

(D.I. 1 in 10-cv-00766 at 2-3.) Those notice letters included invalidity defenses. (LMA4329-779.)

Given Barr's experts' reports in the Kos v. Barr case, Abbott knew that the patents in suit

were susceptible to invalidity challenges. (LMA2255-2556.) Lupin relies on many of the same

theories as Barr, such as anticipation or obviousness based on the O'Neill patent and prior public

use. (LMA2258-68, LMA2357-63, LMA2374 -83, LMA2397-401, LMA2403-05,

LMA2530-38, LMA2289-92, LMA2298-300, LMA2304-14, LMA2320-26, LMA2499-504,

LMA3511-555, LMA2744-50, LMA2766-69, LMA2772-73, LMA3000-08, LMA3015-18,

LMA3020-26, LMA3318-26, LMA3333-36, LMA3338-43.)

With regard to prior public use, Barr's attorneys trumpeted the merits of this defense on

their website, saying: "Kos erected a barrier of seven patents with more than 100 claims around

Niaspan®. Winston lawyers were able to tear down Kos' patent barrier when they discovered

that Kos' own clinical trials rendered the patents invalid for prior public use." (LMA4272-74,

i.e., LMA4273.)  Based on this defense, "Kos came to the table, resulting in an excellent settlement for Barr."  (*Id.*)  Abbott now seeks to avoid this defense with a motion that it could have filed as soon as Lupin asserted invalidity defenses in its answer.

Abbott asserts without support that it did not have a "full and fair opportunity" to litigate Lupin's invalidity defenses.  (D.I. 112 at 13.)  But Lupin's answer and counterclaim properly pled invalidity defenses and properly placed Abbott on notice of Lupin's patent challenges. (D.I. 7 at 11, D.I. 36 at 11-15.)  Abbott makes no claim that it lacked the time or resources to address Lupin's invalidity defenses.  Abbott has identified nothing needed for it to have a "full and fair opportunity" to litigate Lupin's invalidity defenses.  (D.I. 112 at 13.)

Further, Abbott moved to exclude Lupin's invalidity defenses in their entirety only after Lupin served invalidity contentions, supplemental invalidity contentions, and opening expert reports regarding invalidity.  The timing of Abbott's motion suggests that Abbott filed it for strategic reasons, not because Abbott lacked a "full and fair opportunity."

C.     **The *Pennypack* Factors Favor Admissibility**

In seeking exclusion of Lupin's invalidity defenses in their entirety, Abbott ignores the *Pennypack* factors.  (D.I. 112 at 9-14.)  But the *Pennypack* factors discussed above apply with at least as much force to this aspect of Abbott's motion.  Lupin's invalidity defenses are vital to its effort to bring lower-priced generic products to market.  The Hatch-Waxman Act does not require that an ANDA applicant identify every noninfringement and invalidity defense in its notice letter.  21 U.S.C. § 355(j)(2)(B)(iv)(II).  As for prejudice, Abbott's profits will drop if Lupin prevails on its invalidity defenses and eliminates Abbott's patents as barriers to market entry.  But there was no litigation disadvantage due to Lupin's assertion of invalidity defenses after Abbott filed suit, and thus no prejudice of the type contemplated by *Pennypack*.

20

November 10, 2010

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

Karen L. Pascale (# 2903) *[kpascale@ycst.com]*
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600

*Attorneys for Defendants, Lupin Limited and
Lupin Pharmaceuticals, Inc.*

*Of Counsel:*

Barry S. White
Steven M. Amundson
Kevin F. Murphy
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800

21

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on November 17, 2010, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification of such filing to the following counsel of record:

> Mary B. Graham [mgraham@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNEL LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19801

I further certify that on November 17, 2010, I caused a copy of the foregoing document to

be served by e-mail on the above-listed counsel and on the following non-registered participants

in the manner indicated:

### *By E-Mail*

> William F. Lee [william.lee@wilmerhale.com]
> Vinita Ferrera [vinita.ferrera@wilmerhale.com]
> Christopher R. Noyes [cristopher.noyes@wilmerhale.com]
> Wyley S. Proctor [wyley.proctor@wilmerhale.com]
> WILMER CUTLER PICKERING HALE AND DORR LLP
> 60 State Street
> Boston, MA  02109

> YOUNG CONAWAY STARGATT & TAYLOR LLP
>
> */s/ Karen L. Pascale*
> _____
> Karen L. Pascale (#2903) *[kpascale@ycst.com]*
> The Brandywine Building
> 1000 West St., 17th Floor
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> Telephone:  (302) 571-6600
>
> *Attorneys for Defendants, Lupin Limited and
> Lupin Pharmaceuticals, Inc.*