IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT LABORATORIES and ABBOTT RESPIRATORY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LUPIN LIMITED and LUPIN PHARMACEUTICALS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 09-152 (LPS)<br>)<br>)  **EXHIBITS FILED SEPARATELY**<br>)  **UNDER SEAL**<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE
DEFENSES NOT DISCLOSED IN DEFENDANTS' INTERROGATORY
RESPONSES AND TO STRIKE DEFENSES NOT CONTAINED IN DEFENDANTS'
PARAGRAPH IV LETTER AND DISMISS RELATED COUNTERCLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Erich Struble (#5394)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
estruble@mnat.com
  *Attorneys for Abbott Laboratories
  and Abbott Respiratory LLC*

OF COUNSEL:

William F. Lee
Hollie L. Baker
Vinita Ferrera
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

November 22, 2010

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.     INTRODUCTION ........................................................................................1

II.    ARGUMENT ................................................................................................2

    A.    Rule 37(c)(1) Applies to Lupin's Failure to Supplement Its Interrogatory Responses ...........................................................2

    B.    Lupin Has Not Offered a Satisfactory Explanation for Its Non-Disclosure ..............................................................3

    C.    Abbott Is Prejudiced by Lupin's Failure to Disclose Its Invalidity Defenses in Its Interrogatory Responses ......................4

    D.    Lupin's Conduct Demonstrates the Need for Judicial Enforcement of the Hatch-Waxman Act's "Detailed Statement" Requirement ............................................................8

III.   CONCLUSION ............................................................................................10

TABLE OF AUTHORITIES

Page(s)

**CASES**

*AstraZeneca AB v. Mut. Pharms. Co.*,
  278 F. Supp. 2d 491 (E.D. Pa. 2003) ............................................................................................5

*Bridgestone Sports Co. v. Acushnet Co.*,
  No. 05-132, 2007 WL 521894 (D. Del. Feb. 15, 2007) ......................................................2-3, 5

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ...........................................................................................................5

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
  661 F. Supp. 2d 473 (D. Del. 2009) .........................................................................................2, 6

*Minn. Mining & Mfg. v. Barr Labs., Inc.*
  ("*3M*"), 289 F.3d 775 (Fed. Cir. 2002) ......................................................................................8

*Praxair, Inc. v. ATMI, Inc.*,
  No. 03-1158, 2005 WL 2159054 (D. Del. Nov. 28, 2005) ................................................3, 5, 6

*Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.*,
  No. 03-8253, 2005 WL 1457696 (S.D.N.Y. June 15, 2005) .......................................................3

**RULES AND STATUTES**

21 U.S.C. § 355(j)(2)(B)(iv)(II) ....................................................................................................1, 8

Fed. R. Civ. P. 15 ...............................................................................................................................9

Fed. R. Civ. P. 26(e)(1)(A) ..........................................................................................................2-3, 7

Fed. R. Civ. P. 37(c)(1) ................................................................................................................2-3, 5

Plaintiffs Abbott Laboratories and Abbott Respiratory LLC (collectively, "Abbott") submit this reply brief in support of their motion to preclude Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively, "Lupin") from asserting invalidity defenses and certain non-infringement defenses for which Lupin failed to provide proper notice over the course of this litigation.

## I.     INTRODUCTION

Lupin has offered no compelling explanation for its failure to comply with its disclosure obligations. Its primary excuse for not disclosing its invalidity arguments regarding the '930 patent and EP '965 ignores Lupin's obligation to perform an independent assessment of those readily available references. And Lupin does not even bother to explain its failure to disclose its invalidity arguments based upon ATP I, ATP II, ATP III, Altschul, Figge, Fumagalli, Lieberman, Martin, Miller, Mrochek, Neuvonen, and Rifkind (collectively, "the non-disclosed publications"). Lupin's untimely disclosure has deprived Abbott of any opportunity to conduct fact discovery relating to these invalidity theories or to develop its litigation strategy with an eye toward rebutting them. Accordingly, the Court should preclude Lupin's invalidity theories based on the '930 patent, EP '965, and the non-disclosed publications.

As for the deficiencies in Lupin's Paragraph IV letter, this case exemplifies why the holdings of *3M* and its progeny should be reconsidered. Lupin's reading of the Hatch-Waxman Act ignores the statute's requirement of a "***detailed*** statement." 21 U.S.C. § 355(j)(2)(B)(iv)(II). Seizing on its twisted interpretation of the statute, Lupin all but admits that it served a placeholder Paragraph IV letter, only to rely on the diligence of subsequent Paragraph IV filers to fill in its invalidity arguments. Congress could not have intended a system that rewards such parasitic behavior. To give meaning to the statute's "detailed statement" requirement, Abbott respectfully requests that the Court strike Lupin's defenses not contained within its Paragraph IV

letter and dismiss Lupin's related counterclaims. Abbott brings this motion to preserve its right to seek reconsideration of *3M* and its progeny on appeal, if necessary.

II. **ARGUMENT**

    A. **Rule 37(c)(1) Applies to Lupin's Failure to Supplement Its Interrogatory Responses.**

Lupin's argument is premised on a fundamental misunderstanding of Rule 26(e)(1)(A). Lupin selectively quotes from the rule and ignores its requirement that parties supplement their interrogatory responses "in a ***timely*** manner." Fed. R. Civ. P. 26(e)(1)(A). Here, Lupin's disclosure of its new invalidity arguments in its opening expert reports can hardly satisfy Rule 26(e)(1)(A)'s timeliness requirement, coming sixteen weeks after Lupin last supplemented its interrogatory responses on May 12, 2010 and more than ten weeks after the close of fact discovery on June 18, 2010.

Indeed, the perverse results encouraged by Lupin's reading of Rule 26(e)(1)(A) illustrate the absurdity of its position. Lupin's interpretation would render meaningless a party's obligation to respond to interrogatories within the court's deadlines. Parties could ignore contention interrogatories entirely and delay disclosure of their defenses by months or even years, knowing that any non-disclosure could later be cured through expert discovery. Such a rule would turn the discovery process on its head, encouraging delay over disclosure.

To avoid such gamesmanship, the case law stresses disclosure of an accused infringer's invalidity defenses ***during fact discovery***. *See, e.g., Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 661 F. Supp. 2d 473, 479 (D. Del. 2009) (precluding an invalidity defense based on a prior art reference not adequately disclosed prior to the deadline for supplementing interrogatory responses); *Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 WL 521894, at *3-5 (D. Del. Feb. 15, 2007) (precluding invalidity defenses based upon six prior art references not

disclosed in the accused infringer's interrogatory responses); *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158, 2005 WL 2159054, at *4 (D. Del. Nov. 28, 2005) ("Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference."); *Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.*, No. 03-8253, 2005 WL 1457696, at *1 (S.D.N.Y. June 15, 2005) (excluding an invalidity defense that the accused infringer did not raise "[d]uring the period of fact discovery"). Accordingly, under a proper reading of Rule 26(e)(1)(A), Lupin's disclosure of new invalidity theories in its expert reports cannot cure its deficient interrogatory responses, and Rule 37(c)(1) should preclude Lupin's reliance on those late-asserted defenses.

### B. Lupin Has Not Offered a Satisfactory Explanation for Its Non-Disclosure.

To distract the Court from Lupin's failure to disclose its invalidity theories in a timely manner, Lupin blames Abbott's reluctance to produce the Paragraph IV letters served by other generic drug manufacturers for Lupin's deficient interrogatory responses. Lupin's explanation for its failure to disclose its invalidity arguments relating to these readily accessible references ignores its own duty to critically assess the issues in this litigation.

Lupin bemoans the "voluminous prior art" and 3,600,000 pages that Abbott produced during discovery as preventing it from timely developing and disclosing its invalidity theories.[1] Opp. at 5-6. But that excuse is unavailing because discovery was not necessary to identify Lupin's new invalidity arguments, which are based on readily accessible public documents.

---

[1] Lupin's concern over the volume of its material that "Lupin and its experts had to review" is curious given that Lupin candidly admits that it did not formulate its invalidity theories independently but rather borrowed from the work of other generic drug manufacturers, making its experts little more than mouthpieces for the arguments developed by others. *See* Opp. at 5-6, 19; *see also* September 10, 2010 Mumtaz Dep. 57:24-58:7, 112:24-113:2, 143:23-25 (Opening Br. Ex. 7) (discussing Lupin's review of Paragraph IV letters prepared by other filers and its awareness of the invalidity arguments presented in prior litigation involving the patents-in-suit).

Indeed, the ability of other Paragraph IV filers to advance these arguments even without the benefit of discovery belies Lupin's claim that Abbott is somehow to blame for Lupin's non-disclosure. And Lupin, like other sophisticated generic drug manufacturers, conducts prior art searches early in the drug development process to identify such arguments. *See* Mumtaz Dep. 91:16-92:8 (Opening Br. Ex. 7). Lupin certainly did not have to pore over 3,600,000 pages of documents to discover invalidity arguments based on the '930 patent (one of the patents-in-suit), EP '965 (a European counterpart to one of the patents-in-suit), and the non-disclosed publications (which even Lupin admits were discussed during prosecution of the patents-in-suit or prior litigation (Opp. at 12)).

At bottom, Lupin has offered no credible explanation for its failure to identify its arguments based on the '930 patent, EP '965, and the non-disclosed publications according to the schedule established by the Court. Allowing Lupin to assert its arguments based on those references at this late stage would only reward Lupin's sloth and delay.

### C. Abbott Is Prejudiced by Lupin's Failure to Disclose Its Invalidity Defenses in Its Interrogatory Responses.

Lupin's pattern of non-disclosure throughout this litigation is not harmless. Lupin admits that it first disclosed its invalidity arguments based upon the '930 patent, EP '965, and the non-disclosed publications sixteen weeks after the close of fact discovery, depriving Abbott of the opportunity to explore these issues through depositions, interrogatories, or requests for admission. Unless the Court precludes Lupin from advancing its late-raised invalidity theories, Abbott will be forced to rebut these defenses on a tight expert discovery schedule, which was only recently extended to accommodate the death of an Abbott expert. Requiring Abbott to respond to what Lupin describes as "important" defenses at this late date would unjustly reward Lupin's delay, entirely to Abbott's detriment.

Lupin argues that excluding evidence under Rule 37(c)(1) as a discovery sanction is an "extreme" remedy under controlling Third Circuit precedent. Opp. at 9 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)). Lupin ignores, however, that courts in this Circuit—including the District of Delaware—readily impose sanctions under these circumstances, owing to the sophistication of the parties involved in complex patent litigation. *See, e.g., Bridgestone*, 2007 WL 521894, at *4 ("Courts applying the *Pennypack* factors in the case of sophisticated, complex litigation involving parties represented by competent counsel have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied."); *AstraZeneca AB v. Mut. Pharms. Co.*, 278 F. Supp. 2d 491, 508-09 (E.D. Pa. 2003) ("Courts are appropriately and necessarily indulgent to individual plaintiffs in cases such as *Meyers* and *Quinn*—but need not be so indulgent in patent cases such as the present one involving two large business entities, with expertise in their respective fields, and with highly competent counsel representing them."); *see also Praxair*, 2005 WL 2159054, at *4 (excluding undisclosed prior art without discussion of *Pennypack* factors). Holding Lupin to its disclosure obligation is hardly "extreme," as Lupin's business model depends on identifying invalidity defenses for the patents to branded drugs. *See* Mumtaz Dep. 91:16-92:8 (Opening Br. Ex. 7).

Regardless, Lupin's arguments under the *Pennypack* factors unfairly trivialize the prejudice attributable to Lupin's pattern of non-disclosure. At the time Abbott filed its opening brief, it appeared that Abbott would have only one month to respond to Lupin's newly raised arguments under the schedule for serving rebuttal expert reports. Owing to the death of an Abbott expert, the Court extended that schedule. Because Dr. Foster's death occurred suddenly and unexpectedly, Lupin's suggestion that Abbott could have immediately provided Lupin's

opening infringement reports to new experts ignores the realities of the situation Abbott faced and continues to face. Opp. at 7. Abbott has had to use much of the additional time under the revised schedule to locate new experts and familiarize them with the complex issues in this litigation. Lupin cannot use this unforeseeable tragedy to excuse its non-disclosure; indeed, the additional time has provided Abbott no benefit in terms of responding to Lupin's new defenses.

Likewise, Lupin's argument that Abbott's previous knowledge of the prior art references somehow diminishes the prejudice to Abbott misses the point. It is not Abbott's awareness of the references that is at issue; rather, it is Abbott's knowledge that Lupin contends those references are invalidating that is relevant. For this reason, courts—including the District of Delaware—have precluded reliance on prior art, even though it was disclosed, if the disclosure was not adequate to alert the patentee as to the accused infringer's arguments based on the reference. *See, e.g.*, *Lab. Skin Care*, 661 F. Supp. 2d at 479 (precluding a defendant from advancing an invalidity argument based upon a reference that, although disclosed, was not specifically identified within the 1500 pages of documents identified only by Bates number in the defendant's interrogatory responses); *Praxair*, 2005 WL 3159054, at *4 ("Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference."). Here too, Abbott's prior awareness of the references upon which Lupin now relies cannot excuse Lupin's pattern of non-disclosure.

Lupin touts the importance of presenting invalidity defenses in patent cases, owing to the public interest in resolving questions of patent invalidity. Opp. at 8-9. But the public can only benefit from having issues of patent validity resolved through a fair, well-considered process, stifled here by Lupin's unapologetic failure to comply with basic discovery disclosure

requirements. Similarly, Lupin emphasizes the harm that it would suffer if the Court were to preclude its "important" invalidity defenses. Opp. at 8. Of course, Lupin has only itself to blame for not raising these issues earlier; indeed, the prior art that forms the basis of its invalidity defenses was readily available to Lupin even before this litigation began, and other Paragraph IV filers have made the same arguments in their letters even without the benefit of discovery.

Finally, Lupin's criticism of Abbott's alleged oversights is no defense to Lupin's own unexcused pattern of non-disclosure. As even Lupin recognizes, Abbott—unlike Lupin—has heeded Rule 26(e)'s command to supplement its interrogatory responses. Opp. at 3. And Abbott's assertion of infringement relating to two additional dependent claims[2] (out of 54 total asserted claims) in its opening expert reports that were not previously identified in its interrogatory responses pales in comparison to Lupin's consistent failure to disclose its invalidity defenses throughout this litigation. Opp. at 4.

In light of the foregoing, Lupin's failure to disclose in its interrogatory responses the invalidity defenses based upon the '930 patent, EP '965, and the non-disclosed publications is neither "substantially justified" nor "harmless." Accordingly, the Court should preclude Lupin from advancing these defenses in this litigation.

---

[2] Those additional claims—claims 13 and 14 of the '967 patent—parallel dependent claims 25 and 26 of the '967 patent. Because Lupin had ample notice that Abbott was asserting infringement of claims 25 and 26 by Lupin's 1000 mg extended-release niacin formulation, it can claim no prejudice by Abbott's later assertion of claims 13 and 14 against the 500 mg dosage form. Not surprisingly, Lupin's invalidity analysis in its additional invalidity expert report, which relates to claims 13 and 14 of the '967 patent, is identical to what it submitted for claims 25 and 26 in its opening expert reports. *Compare* October 31, 2010 Additional Wharton Expert Report (attached as Exhibit A) ¶¶ 10-11, 15 *with* August 31, 2010 Wharton Expert Report (attached as Exhibit B) ¶¶ 228-29, 237. Indeed, Lupin's expert admits he did not consider any additional data or documents in forming his opinions relating to claims 13 and 14. *See, e.g.*, Additional Wharton Expert Report ¶ 17.

### D. Lupin's Conduct Demonstrates the Need for Judicial Enforcement of the Hatch-Waxman Act's "Detailed Statement" Requirement.

Lupin likewise offers no credible explanation for its failure to disclose *any* of its invalidity defenses even before this litigation began in its Paragraph IV letter. Lupin's only justification for its non-disclosure derives from a tortured reading of the relevant statutory text, which ignores the statute's requirement that a generic drug manufacturer provide a "***detailed* statement**" of its defenses in its Paragraph IV letter. 21 U.S.C. § 355(j)(2)(B)(iv)(II). Such a rule would subvert the statutory scheme for generic drug approval, rewarding hasty Paragraph IV certifications to the detriment of patentees, subsequent generic filers, and the courts. Indeed, Lupin all but admits to exploiting the Hatch-Waxman Act's regime in this way, boldly asserting that it had no statutory duty to provide any invalidity defenses in its Paragraph IV letter and then complaining that Abbott did not assist Lupin in borrowing the invalidity arguments made by other Paragraph IV filers.

As an initial matter, Abbott acknowledges that *3M* and its progeny hold that a district court "cannot decide [the] question of compliance with the paragraph IV certification requirements." *Minn. Mining & Mfg. v. Barr Labs., Inc.* ("*3M*"), 289 F.3d 775, 783 (Fed. Cir. 2002). For the reasons stated in Abbott's opening brief, however, this case is factually and procedurally distinguishable from *3M,* and so *3M* does not control the outcome. Opening Br. at 10-14. But if *3M* were to apply, this case exemplifies why *3M*'s holding should be reconsidered.

Lupin offers a strained reading of the statutory text that emphasizes the statute's use of the disjunctive "or" rather than the conjunctive "and." Opp. at 16. In arguing that Congress somehow gave generic drug manufacturers the option to choose which of their defenses to disclose in their Paragraph IV letters, Lupin ignores the statute's requirement to provide a

"*detailed* statement." Congress certainly did not demand details only to allow Paragraph IV filers to be selective in the details they provide.

Likewise, Lupin mischaracterizes Abbott's position regarding the statute's detailed statement requirement. Abbott does not suggest, as Lupin argues, that a Paragraph IV filer must provide "all defenses that it might raise during the litigation" in its Paragraph IV letter. Opp. at 16. Rather, Abbott argues that the Hatch-Waxman Act requires a generic drug manufacturer to include in its Paragraph IV letter any defenses it could have known without the benefit of discovery. Opening Br. at 11. Lupin's criticism that this interpretation has no basis in "any statutory language or legislative history" is meritless; Abbott's reading flows naturally from the statutory requirement of a "detailed statement" and the practical limitations on a Paragraph IV filer's pre-litigation disclosures.[3]

Finally, Lupin's conduct confirms that judicial enforcement of the Hatch-Waxman Act's "detailed statement" requirement is necessary to curtail abuses to the generic drug approval process. As described in Abbott's opening brief, Lupin served a barebones Paragraph IV letter, which contained *no* invalidity defenses and only two non-infringement defenses, one of which the Court has rendered moot through claim construction. Opening Br. at 12. Lupin candidly admits in its opposition that it has not formulated its own invalidity defenses but instead relies on the Paragraph IV letters from other generic drug manufacturers and the arguments raised in prior

---

[3] Lupin's additional arguments regarding the practical implications of enforcing the Hatch-Waxman Act's detailed statement requirement are similarly unavailing. Lupin's suggestion that a claim-by-claim invalidity analysis would be overly burdensome (Opp. at 17) ignores that invalidity arguments generally apply across families of claims, allowing multiple claims to be analyzed together. And Lupin's fears that judicial enforcement of the Hatch-Waxman Act will interfere with the amendment of pleadings as of right within 21 days of service under the Federal Rules is unrealistic. Opp. at 18. As a practical matter, any defense that could be raised during Rule 15's period to amend as of right must be asserted without the benefit of discovery.

litigation involving the patents-in-suit to provide its invalidity arguments. Opp. at 5-6, 19; Mumtaz Dep. at 112:24-113:2, 143:23-25 (Opening Br. Ex. 7). The Hatch-Waxman Act's "detailed statement" requirement is designed to prevent precisely this situation, where a generic drug manufacturer files a placeholder Paragraph IV letter to obtain the benefits of early filing and then free-rides on the efforts of subsequent Paragraph IV filers. *See* Opening Br. at 14. To prevent Lupin from profiting from its abuse of the Hatch-Waxman process, the Court should strike Lupin's defenses that it could have raised in its Paragraph IV letter, but delayed disclosing until months later.

### III. CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court preclude Lupin from relying on EP '965, the '930 patent, and the other non-disclosed publications as prior art to the patents-in-suit that were not timely disclosed during fact discovery. Abbott also respectfully requests that the Court strike Lupin's defenses that were not included in its Paragraph IV letter and dismiss Lupin's related counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

---

Mary B. Graham (#2256)
Erich Struble (#5394)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
estruble@mnat.com
   *Attorneys for Abbott Laboratories
   and Abbott Respiratory LLC*

OF COUNSEL:

William F. Lee
Hollie L. Baker
Vinita Ferrera
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

November 22, 2010
3908630

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on November 22, 2010 upon the following individuals in the manner indicated:

**BY E-MAIL**

Karen L. Pascale, Esq.
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**kpascale@ycst.com**

**BY E-MAIL**

Kevin F. Murphy, Esq.
FROMMER LAWRENCE & HAUG LLP
**kmurphy@flhlaw.com**

Michael F. Brockmeyer, Esq.
FROMMER LAWRENCE & HAUG LLP
**mbrockmeyer@flhlaw.com**

Barry S. White, Esq.
FROMMER LAWRENCE & HAUG LLP
**bwhite@flhlaw.com**

Steven M. Amundson, Esq.
FROMMER LAWRENCE & HAUG LLP
**samundson@flhlaw.com**

*/s/ Mary B. Graham*

Mary B. Graham (#2256)